## SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY v. G. W. BELT.

### Decided October 29, 1900.

**1. Railway Company—Street Crossing.**

The provision of the statutes imposing on railway companies the absolute duty to restore a street which its road may cross to its former condition, or to such condition as not to unnecessarily impair its usefulness, is applicable only when the road is constructed across a street already established, and does not apply to a street crossing in which the public have acquired a right by long permissive use. Rev. Stats., art. 4426.

**2. Same—Degree of Care in Keeping in Repair.**

Where, subsequent to the acquisition of the right of way and the construction of the railroad, a street is laid out so as to cross the track, the duty of the railway company in making repairs at such crossing is to exercise ordinary care to prevent injury to those using the crossing, to finish its repair work within a reasonable time, and to exercise ordinary care to maintain the crossing in a reasonably safe condition for the use of the public.

**3. Same—Same.**

Though a crossing be not technically a street crossing, yet where the railway company by its acts invites its use as such by the public, it assumes the duty of acting towards it in all respects as if it were a lawful crossing, and is chargeable, as in the case of other crossings, with the use of ordinary care, but not of the highest care, to keep it in a reasonably safe condition for use by the public.

**4. Same—Noise by Engine—Assumed Risk.**

One driving near an engine on the assumption that it will remain quiet has not the right to complain where the horse takes fright at noises necessarily and usually incident to the safe operation of the engine, but does have such right where the horse was frightened by a sudden and unexpected starting of the engine, accompanied by unnecessary noise of escaping steam, and was caused to run away.

**5. Measure of Damages—Personal Injury—Double Recovery.**

A charge authorizing a recovery by plaintiff, suing for personal injuries to his wife, to recover the value of the time and services lost by reason of such injuries, and also, if the injuries are found to be permanent, compensation for her future diminished capacity to labor, is not objectionable as allowing a double recovery where the context shows that the element of loss of time had reference to time lost prior to the trial.

**6. Same—Husband's Damage for Injury to Wife.**

In an action by a husband for negligent personal injury to his wife by a railway company, defendant is not entitled to have the jury deduct from the damages representing the value of her services lost thereby the necessary expenses which the husband must incur in maintaining the wife.

**7. Assignment of Claim for Damages—Parties.**

When a contract by which plaintiff assigned to his attorney one half his claim for damages growing out of negligent personal injury to his wife was executed prior to the institution of the suit and prior to the enactment of article 3353a of the Revised Statutes, the court did not err in excluding evidence of the contract, as the assignee was not a necessary party to the suit.

**8. Charge of Court—Personal Injury—Distinct Issue.**

In an action for personal injuries occurring to persons in a buggy at a railway street crossing, it was the right of the defendant company to have the charge submit as a distinct issue, there being evidence to support it, that if the horse was frightened at the noise necessarily required to stop the engine to avoid a collision with the buggy, and was thus caused to run and overturn the buggy, the jury should find for defendant, if the engineer exercised ordinary care in stopping the engine.

**9. Jury—Right to Test Intellectual Qualification.**

Where counsel for defendant requested the court by motion to allow him to

ask each juror on the panel on his voir dire examination certain questions tending to disclose the familiarity, or lack of it, on the part of the jurors with courts and legal terms and expressions, the court did not err in denying the motion, and in declining to suggest such questions as he would allow counsel to ask the jurors.

APPEAL from De Witt.  Tried below before Hon. JAMES C. WILSON.

*Proctors,* for appellant.

*H. J. Huck, Jr.,* for appellee.

GILL, ASSOCIATE JUSTICE.—This is a suit brought by appellee to recover of appellant damages for personal injuries alleged to have been sustained by his wife in a runaway accident due to the negligence of appellant.  A trial by jury resulted in a verdict and judgment for $5000 in favor of appellee, from which the railway company has appealed.  This is the third appeal.  On the first the judgment was reversed because of the error of the trial court in sustaining a general demurrer to the petition.  37 S. W. Rep., 362.  On the second a judgment in favor of plaintiff was reversed because of errors committed on the trial.  46 S. W. Rep., 374.

The accident is alleged to be due to the negligence of the company in permitting the noise and movement of its engine to frighten the horse which the wife and another were driving, causing him to run away.  It is also alleged that the railway crossing at which the accident occurred was negligently left by the company in a bad state of repair, and that the railway company's yardmaster negligently caused the horse to turn from its course, and that by each and all these acts of negligence the injuries were sustained.  Appellant excepted generally and specially to the petition of appellee and answered by general denial.

Briefly stated, the facts are as follows:  The plaintiff's wife and one Mrs. Tankersley were riding in a buggy drawn by a horse.  Mrs. Tankersley was driving.  There was evidence tending to show that the horse was gentle and not afraid of trains or engines.  Plaintiff's wife and Mrs. Tankersley came down Hochheim Street in the town of Yoakum in De Witt County and started across the railway tracks of appellant at that point.  For a part of the width of Hochheim Street the company had constructed and maintained a railway crossing, and this had for about nine years been generally used by the public of Yoakum in crossing the railway at that point.  The railway company owned its right of way in fee simple, the road having been built and the title acquired prior to the location of said town.  Hochheim Street is a public street in the town of Yoakum; is sixty feet in width, and touches the eastern and western side of appellant's right of way.  The railway crossing connects the two ends of the street so that, if the crossing be treated as a part of it, it is a continuous street, running to and across the railway at the point in question.  Neither the town nor the county authorities have ever condemned that part of the right of way so as to make it a part of

the street. The crossing was maintained by the railway company for the convenience of the public; and independent of any other fact such use and acquiescence was shown as gave the public the right to cross at that point. There is no proof that the width of the street was outlined across the railway right of way by fencing or other structures. On the right of way at this point was the main track and four other tracks.

At the time of the accident the company was engaged in repairing its tracks known as the compress spurs, same being the tracks next to the eastern edge of its right of way, the main track and what was known as the team track lying west of them. These compress spurs were not filled in the entire width of the street, but there was a temporary crossing of sand and planks over the compress tracks. This temporary crossing was from thirty to forty feet wide. On either side of the crossing the ties and rails of the spur tracks were uncovered and stood six or eight inches above the level of the ground. There was testimony to the effect that the eastern spur had been in an unfinished condition for a week or two, the work of repair going on during that time and being in progress at the date of the accident.

At the time of the accident appellant's engine in charge of one Tankersley and his fireman was on the main track. Appellee's wife and Mrs. Tankersley (wife of said engineer) were in an open buggy driving a horse, the property of plaintiff. Mrs. Tankersley had the reins and attempted to drive over the crossing going from west to east. As they crossed the "team track" both ladies saw Tankersley on his engine, spoke to him, and received a salutation from him. After the horse crossed the "team track" it became frightened at the engine and ran over the main track. Just at this point appellant's yardmaster, Dyas, then in charge of appellant's switch crew, ran in front of the horse and tried to stop him, when the horse swerved to the north of Dyas, the buggy struck the unfinished portion of the spur tracks and overturned, and both the ladies were thrown out and injured. As to the precise details of the accident, as to the position of the engine, as to whether it was moving or standing still, and as to whether it was making a loud and unnecessary or unusual noise when the horse became frightened, there is much conflict in the evidence. There was also a conflict as to whether the horse was safe to drive in the vicinity of trains. In view of the disposition of this appeal we deem this statement sufficient, and for a like reason forbear to comment on the evidence.

1. By its second assignment of error appellant complains of the following portion of the court's charge: "The law requires the railway company to restore any street or highway which its route may cross, to its former condition, or to such condition as not to unnecessarily impair its usefulness, and to exercise reasonable care to keep its crossings in such reasonable repair as an ordinarily prudent person would use under similar circumstances. If you believe from the evidence that the defendant had its track or tracks across Hochheim Street in the town of Yoakum, and did not restore such street to its former state, or to such condition as not to unreasonably impair its usefulness, and that such failure to

restore such street was a proximate cause of injury to plaintiff's wife, combining with other negligence of defendant or alone, you will find for plaintiff," etc. The objection to this charge is that it charges the duty imposed upon railway companies by article 4426 of the Revised Statutes, when, under the facts adduced, such article is not applicable.

It is clear to our minds that the article in question applies only in cases where a railway company, during the construction or in the extension of its railway lines or switches, undertakes, in the exercise of the power conferred by law, to intersect or touch by its route any stream, watercourse, street, highway, or canal; and that, as applied to streets and highways such absolute duty is imposed only when a railway line is constructed along or across a street or highway already established. The article reads as follows:

"Art. 4426. Such corporation shall have the right to construct its road across, along, or upon any stream, watercourse, street, highway, plank road, turnpike, or canal which the route of such railway shall intersect or touch; but such corporation shall restore such stream, street, etc., thus intersected or touched, to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair." This article appears in chapter 8, of title 94 of the Revised Statutes, which chapter is devoted to regulations with reference to the acquisition of right of way by railway companies and the imposition of certain duties in connection with the rights conferred. Article 4438 of the same chapter forbids the use of any such street without the assent of the city, thus showing clearly that a pre-existent street was contemplated.

The street in question was laid out subsequent to the acquisition of the right of way and the construction of the road. That part of the right of way is not shown to have been condemned and subjected to street purposes. But even had this been done, the city could not have lawfully forbidden the repair of the railway tracks across the crossing, and the company, in conducting such repairs, would have been held only to the exercise of ordinary care to prevent injury to those using the crossing, to the finishing of its repair work within a reasonable time, and the exercise of ordinary care to maintain the crossing in a reasonably safe condition for the use of the public.

By the section of the charge complained of, and especially the part which undertakes to apply the law to the facts, is imposed upon the company the absolute duty to restore the crossing to its former condition or to such a condition as not to unnecessarily impair its usefulness. We are of opinion that, under the facts shown, the company was chargeable with no higher duty than the exercise of ordinary care in making the repairs undertaken with reasonable dispatch and conducting the work with ordinary care looking to the safety of those using the crossing as such. Or, if it should be held that the crossing was not technically a street crossing, still, since the company had by its acts invited its use as such, it was the company's duty to exercise ordinary care to keep it in a reasonably safe condition for use by the public. Railway v. Warner,

88 Texas, 642; Railway v. Able, 72 Texas, 150; Railway v. Montgomery, 85 Texas, 64.

Having thus invited the use by the public, it also assumed the duty of acting toward it in all respects as if it were a lawful crossing, which involves the statutory duty of sounding the whistle or ringing the bell when approaching it. Railway v. Lee, 70 Texas, 296; Railway v. Bridges, 74 Texas, 520. But the statute being complied with in this respect, the company is chargeable with the exercise of only ordinary care to prevent injury to persons crossing, even where the crossing is shown to be a public crossing in the strictest sense of the term. The charge complained of imposed a higher degree of care than is imposed by law, and under the facts of this case such error must be held to have been harmful. What has been said sufficiently disposes of the third, fourth and fifth assignments, they being addressed to the same question.

2. By the sixth assignment appellant complains of the trial court's definition of negligence, in that it is defined to be the want of such care as reasonably prudent men *generally* would use, etc. We do not hold the use of this word reversible error, but suggest that upon another trial the approved definition be adhered to. The matter complained of in the seventh assignment is not likely to be embodied in any subsequent charge, so we do not deem it necessary to discuss it.

3. The following portion of the charge is assailed by the eighth assignment: "The court erred in that portion of subdivision 6 of its main charge wherein it instructed the jury as follows: You are instructed that as to whether or not defendant blew off steam from its engine at said railroad crossing, and by reason thereof frightened the horse that the wife of plaintiff was driving, is a question of fact to be determined by the jury from the evidence before them; and if you find that the defendant company blew off steam from its engine at said crossing and thereby frightened the horse, then being driven on such crossing by plaintiff's wife, and the agents or employes of defendant knew of the presence of plaintiff's wife on said track, then you will further consider whether or not the blowing off of steam was negligence, and whether same frightened said horse, and that such blowing off of steam and the frightening of said horse on said crossing, if you so find, could have been prevented by the use of such care on the part of the agents or employes of the defendant as a man of ordinary prudence would use under similar circumstances to avoid injuring persons so using said crossing."

The first objection to this section of the charge is that it assumes as a fact that the horse was just being driven upon the crossing when the steam escaped, etc., the evidence being conflicting. This objection seems to us hypercritical. The language complained of can not be fairly held to be an expression of an opinion of the court as to the evidence upon that issue. However, even the appearance of such an evil can be easily avoided upon another trial.

The second objection is untenable because the noise of escaping steam was the noise complained of by plaintiff. No recovery was sought on the ground that the horse became frightened at the engine

alone, but that the noise made caused the fright. That other noises were made in stopping the engine, but that they were necessary and unavoidable, was sought to be shown by defendant as a matter of defense.

The third objection is sound. It was shown that the engineer knew of the presence of the horse and buggy at or near the crossing, and that the occupants of the buggy knew of the approach or proximity of the engine. A certain amount of noise is necessarily incident to the handling of a locomotive engine, and the noisy and sudden escape of steam from the safety valve is a matter of common knowledge. Persons who drive in close proximity to a locomotive on the assumption that it will remain quiet can not be heard to complain that the horse takes fright at noises necessarily and usually incident to its safe operation. The company has a right to run its engines along its tracks, and in so doing to create such noises as are reasonably incident to its proper management. Liability would no more grow out of fright created by such a cause than could liability be predicated upon fright proceeding from the ordinary appearance of a locomotive in the absence of noise.

Independent of the other issues in the case, what then was necessary to be shown in order to render the company liable for injuries resulting from the fright of the horse caused by the noise of the engine under the facts of this case? (1) The presence of the horse should have been known to the operatives of the engine. (2) The probability of causing fright to the horse and consequent disaster should have been apparent to a person of ordinary prudence, situated as the engineer then was. (3) The noise causing the fright should have been due to causes under the engineer's control, and such noises should have resulted from the failure on his part to exercise ordinary care to prevent them.

If these facts concur, and the person injured was exercising ordinary care, the company is liable. The existence of the crossing and the presence of the horse thereon would not be a necessary element in the case under such circumstances, for the engineer would owe a like duty to one in charge of a horse and near the engine, though not on the crossing or right of way. Railway v. Box, 81 Texas, 677; Hargis v. Railway, 75 Texas, 21.

Under the fifth objection to this section of the charge it is contended that the court erred in charging that it was a duty which the operatives of the engine owed to persons using the crossing to exercise ordinary care to prevent injury to them; the ground of the objection being that the trainmen were not chargeable with the duty of exercising ordinary care to prevent frightening horses by the escape of steam. This contention might ordinarily be sound, but in this case the noises complained of were averred to be unusual and unnecessary and unexpected. The persons injured saw the engine, which was either standing still or moving slowly. The crossing was in frequent use by the general public, and even had the horse not in fact been seen by the engineer, yet it was his duty, before suddenly putting his engine in motion with its attendant noises and in such close proximity to the crossing, to look out for persons likely to be present on the crossing and to exercise ordinary care

in the operation of his engine not only to prevent collision with persons crossing, but to avoid the fright which would probably result from the sudden and unexpected movement.

In Railway v. Watkins, 26 Southwestern Reporter, 760, a recovery was permitted for an accident due to the fright of a woman caused by her sudden discovery of the close proximity of a train which had approached without warning, and whereby she, in her confusion, jumped against instead of away from the train. The rule is that in the operation of trains at points where persons are likely to be, care must be exercised to avoid injury from the effects of its unheralded approach, as well as to avoid collision. In the case cited it was immaterial whether the woman's injuries were due to the fact that she jumped against the train or away from it. Her injury was immediately due to the sudden fright caused by the negligence of the engineer in failing to give some warning of the approach of the engine. This general duty is not, however, invoked by the facts, the presence of the horse being in fact known to the engineer, and the rule should not be embodied in the charge.

In the case at bar the engine was near a much used crossing. The presence of the engine was known to the occupants of the buggy, and if the horse was in fact gentle and would not take fright at the usual noises made by an engine, they were not, per se, guilty of negligence in undertaking to cross ahead of it. They had the right to assume that it would make only the usual and necessary noises, against which they might have been prepared, and the engineer owed them the duty to exercise ordinary care to prevent any unusual, extraordinary, or sudden noises or movements which would appear to a man of ordinary prudence to be likely to cause the horse to take fright and injure the occupants of the buggy. Railway v. Box, 81 Texas, 677; Hargis v. Railway, 75 Texas, 21.

The ninth assignment of error is as follows: "The court erred in subdivision 9 of its charge, wherein it instructs the jury as to the measure of damages as follows: If you find for the plaintiff under the foregoing instructions from a preponderance of the evidence, you will consider whether he has been damaged; and in measuring the damages, if he has sustained any, you will take into consideration the reasonable value of the time and service lost to the plaintiff by his wife, if you find he has sustained any by reason of her injuries, the necessary sums expended by him for medicine, if any was rendered necessary by such injuries, the physical and mental pain to plaintiff's wife, if any, suffered since her injuries in consequence of such injuries. If you believe from the evidence that such injuries to plaintiff's wife, if any, are permanent, and will disable her to labor and earn money in the future, you may also find such sum as will be fair compensation for her future diminished capacity to labor and earn money, if any, and you may take into consideration the length of time the *life* of plaintiff would, in the ordinary course of life, have lived if the injuries had not occurred."

One objection urged against this subdivision of the charge is that it authorizes a double recovery, in that the jury is authorized to award

damages for time lost and diminished capacity to labor and earn money. We think the objection untenable. The recovery authorized for time lost is for time already lost prior to the date of the trial, and the recovery authorized for diminished capacity to labor and earn money refers to future losses in that regard. The distinction, however, should be more clearly made upon another trial.

Another objection urged is that the jury is not directed to deduct from the pecuniary loss sustained because of time lost and diminished capacity to labor and earn money, the expenses of maintaining the wife, since, from whatever she may have earned, her maintenance must have been deducted. In the case cited in support of this contention (Railway v. Southwick, 30 Southwestern Reporter, 597) the suit in part was by the husband for the death of the wife. In such a suit the recovery would be for his own separate use, and many of the elements of damage in this case, such as physical and mental suffering, could not be considered at all.

In such cases as the one at bar, where the injury does not result in death, the law denies to the wife the right to sue. The suit is brought by the husband in his own name, and the wife is not even a necessary or proper party. He recovers in the same right and to the same extent as if she had been a feme sole and had sued in her own right, except that the recovery is community property. Had the wife been a feme sole and brought the suit, no such deduction as that claimed would have been proper. The reasons are apparent.

The other objections need not be noticed, one being directed at a clerical error so apparent as not to be misleading, and the remaining ones being without merit.

The tenth assignment is sufficiently disposed of in the portion of this opinion devoted to the discussion of the duty of the company with reference to the crossing.

Appellant sought to prove that plaintiff had assigned to his attorney a half interest in the recovery in this cause as compensation for his services as such attorney, but the evidence was excluded on objection. This is assigned as error. We think the trial court correctly excluded the proffered evidence. The purpose of appellant was to show thereby that the attorney owned a half interest in the cause of action, and was therefore a necessary party plaintiff. The contract by which the half interest in the action is alleged to have been assigned to the attorney was executed prior to the bringing of the suit, and prior to the enactment of article 3353a of the Revised Statutes. Prior to the enactment of said article it was uniformly held that the attorney holding a transfer to secure a contingent fee was not a necessary party, and that evidence of his contract with his client was not admissible. What would be the effect of a transfer prior to suit brought since the enactment of said article, we do not decide. The case of Railway v. Vaughn, 16 Texas Civil Appeals, 403, is not in point, the contract in that case being executed subsequent to the filing of the suit and the present question not being made in that case.

Appellant further complains that the court erred in refusing a special charge submitting the issue as to whether the alleged accident was of such a nature as could have reasonably been foreseen as the proximate result of the defective crossing. While we do not commit ourselves to an approval of the present form of the requested charge, we think a charge upon that issue should have been given, if requested.

Appellant requested a charge to the effect that if the engineer saw the horse and buggy approaching, and stopped his engine to avoid a collision, or in order to avoid getting closer and frightening the horse, and that the horse became frightened at the noise thus made in stopping the engine, the defendant would not be liable for such fright; and the refusal of the court to give it is assigned as error. We think the charge should have been given. The defendant had the right to have that distinct phase of his case presented, the issue being made by the evidence. But it should be charged in this connection that the engineer was chargeable with the exercise of ordinary care in stopping his engine.

By the first assignment of error appellant complains because the court refused to permit counsel to ask each juror on the panel certain questions prior to the striking of the jury lists. The declared purposes of the questions were: (1) To disclose on the part of some members of the jury such mental incompetency, lack of information and want of judgment as would render them unfit to serve as jurors in the particular case and authorize a challenge for cause. (2) In order that counsel might be informed as to the degree of fitness or unfitness of the various jurors in this respect, so that the right of peremptory challenge might be judiciously exercised. To this end it was proposed to ask each juror on the panel to state in his own language what was meant by the usual definition of ordinary care, the usual definition being set out in the question; to define what was meant by "ordinary," "care," "ordinarily," "prudent," "circumstances;" to state what was meant by the usual definition of negligence, the usual definition being given in the question; to state what was meant by the usual charge on the responsibility of the master for the negligence of his servant; to state what was meant by the usual charge on proximate result; to state what was meant by the usual charge on the measure of damages in a case like the one at bar,— the question in each instance setting out the part of the charge inquired about. It was also proposed to have each of them give, in their own way, what they understood to be meant by the words "plaintiff," "defendant," "burden of proof," "charge of the court," "preponderance of the evidence," "credibility of the witnesses," and "measure of damages." The proposition was in the form of a motion, and counsel further asked that, should the court deem the questions proposed improper, the court should indicate what questions he would permit for the purposes suggested. The court having excluded the questions and declined to indicate what questions he would permit, counsel excepted, and here complains of the court's action.

The question has been ably and exhaustively briefed by appellant's

counsel, and the contention is presented most ingeniously. We do not feel called upon, however, to pass upon the question of the right to propound questions looking to a disclosure of the mental fitness of the individual juror, except in so far as the exact matter contained in the motion is involved. As to that, we think the action of the court was correct. The questions propounded were not of such a nature as to tend to disclose mental fitness or unfitness of the jurors, but would have simply tended to disclose the familiarity or lack of familiarity with courts and legal terms and expressions. The law does not contemplate that a juror should be learned in the law. A juror might be eminently fitted to pass upon the facts of the case in the light of the charge of the court, and yet be so unfamiliar with courts and their procedure as to require at the hands of the court definitions couched in simpler language than is usually used. If the charge of the court is not comprehended or understood by the juror, it is not only his right but his duty to ask for further instruction. If counsel for either party is apprehensive upon this point he can have the jury advised as to this right and duty. A juror might enter upon the trial of a case with a very hazy comprehension of these terms and definitions, and yet might be fully educated on the subject by the time the charge of the court was read. Indeed it is a part of the duty of counsel representing litigants to so conduct the trial, and especially to so direct the argument, as to enlighten the jury upon the law as applied to the facts. If counsel, during the trial, discharge their duty in this respect, a juror who could not at the close of the argument comprehend the simple matters inquired about must be in such mental state as to be subject to challenge on the ground of idiocy or lunacy, and such a state of mind is usually so generally known as to be easily shown by proof from outside sources.

As to the contention that the questions should have been permitted in order that counsel might judiciously exercise the right of peremptory challenge, we think it may be safely said that a litigant should not be permitted to consume the time of the court in an investigation as to the comparative mentality of the jurors composing the panel. Touching an issue of this sort, the litigant should at least make such outside investigation as would enable him to charge that some particular member of the panel was thus mentally unfit, in order that the inquiry might be directed and confined to the juror suspected. We think the motion was properly overruled, and that it was not the duty of the court to suggest questions such as he would allow.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*