## STEPHENSON v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS.

(Court of Civil Appeals of Texas. Dallas. Feb. 28, 1914. On Rehearing, March 28, 1914.)

1. RAILROADS (§ 303*)—CROSSINGS—MAINTENANCE—CHARACTER OF ROAD.

Rev. St. 1911, art. 6494, makes it the duty of every railroad to keep that portion of its right of way over which any public road may run in proper condition for use of the traveling public, and article 6485 declares that railroads may construct their roads across, along, or on any highway which its road shall intersect, provided the corporation shall restore the road, etc., to its former state, and keep the crossing in repair. Held, that the absolute duty imposed on railroad companies by both articles to keep highway crossings in repair was limited to public highways established by the county authorities, and did not apply to a crossing of a road not so established, as to which the railroad company was only required to exercise ordinary care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 959–963, 966, 967; Dec. Dig. § 303.*]

2. RAILROADS (§ 303*)—CROSSINGS—DEFECTS—KNOWLEDGE.

Where plaintiff was injured by a defective railroad crossing not at the intersection of a public county road or one where the railroad company was absolutely bound to keep the crossing in repair, its duty being only to exercise reasonable care in that regard, the court properly submitted to the jury the question of the railroad company's want of knowledge of the alleged defect as an element of its alleged negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 959–963, 966, 967; Dec. Dig. § 303.*]

3. RAILROADS (§ 350*)—CROSSING ACCIDENT—DEFECTIVE CHARACTER OF CROSSING—CONTRIBUTORY NEGLIGENCE.

Where, in an action for injuries to plaintiff by a defect in a railroad crossing, it was undisputed that the lumber with which plaintiff's wagon was loaded slid forward onto the team when the front wheels dropped from an elevation in the road onto the crossing, and defendant pleaded that plaintiff was negligent in loading the wagon so that the lumber could slip or slide, plaintiff's contributory negligence in that regard was properly submitted to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

Appeal from District Court, Hunt County; Wm. Pierson, Judge.

Action by R. A. Stephenson against the St. Louis Southwestern Railway Company of Texas. Judgment for defendant, and plaintiff appeals. Affirmed.

Yates, Sherrill & Starnes, of Greenville, for appellant. E. B. Perkins, of Dallas, and Crosby, Hamilton & Harrell, of Greenville, for appellee.

RASBURY, J. Appellant sued appellee for damages for personal injuries, alleging same resulted from a defective crossing maintained by appellee at a point in Hunt county where its line of railway crosses a public county road, or, if not a public county road, one, nevertheless, which had for many years been used by the public as a highway, and over and upon which appellee had constructed and maintained a crossing for the use of the public. The negligence alleged to be the proximate cause of the injuries sued for was in permitting earth to pile up and accumulate just south of its south rail (appellant's line of railway running east and west, and the county road north and south), one and one-half feet above the rail, making a sheer drop that distance for vehicles when passing over the railway, and rendering same extremely dangerous. Appellant further alleged that, while driving on said road, going north, and

in the exercise of due care, and without knowledge of the defective condition of the crossing, he undertook to cross appellee's track, but that, when the front wheels of his vehicle reached said pile or accumulation of earth, same dropped therefrom with such force as to displace the lumber contained on his wagon, causing same to slip forward and strike his horses, frightening them and causing them to run, and, in turn, throwing appellant from his said wagon, seriously and permanently injuring him.

Appellee, in addition to general and special exceptions, and the general issue, alleged appellant to be guilty of contributory negligence, in that he was driving a wagon without a brake, heavily loaded with lumber, which had been loaded and placed thereon in such manner as to permit same to slip and move about. Other special defenses were interposed by appellee, and testimony offered upon trial in support thereof, but, since no issue thereupon arises in any manner, it will not be necessary to detail same. There was a trial by jury. Verdict was for appellee, followed by judgment, from which this appeal is taken.

Neither appellant nor appellee have included within their brief a general statement of the essential facts developed by them upon trial of the case, and we shall not attempt to do so, but, instead, will refer to such facts as are considered necessary in disposing of the various assignments of error.

The first and second assignment of error attack the correctness of a portion of the court's charge, and will be considered together. After certain preliminary definitions of ordinary care and proximate cause, and after referring to the jury for their determination whether the crossing was in the condition claimed, and, if so, whether such condition was defective and dangerous to travelers, the court instructed the jury, "and, if you further believe that its defective condition, if it was defective, was known to the defendant, or by the exercise of ordinary care could have been known to the defendant or its servants charged with the duty of keeping the crossing in repair," etc., to find for appellant. In the succeeding paragraph of his charge, the court affirmatively presented negatively the issues raised by appellant's evidence, instructing the jury, among other things, to find for appellees, if they believed the condition of the crossing "was not known to defendant nor its servants charged with the duty of keeping the crossing in repair, and by the use of ordinary care would not have been known." The criticism of the portions of the charge quoted is that the same imposed upon appellant the burden of proving facts which the law charges appellee with knowledge of, since it was appellee's absolute duty to keep such crossing in repair, and a failure to do so was negligence per se. Appellee asserts, in answer to the criticism of the charge, that, the evidence show-

ing without controversy that the road which crosses its line of railway at the point of accident was not a "public county road," appellee owed those using the crossing no greater duty than the exercise of ordinary care to keep it in a reasonably safe condition, and to repair such defects of which it had notice, or, in the exercise of ordinary care, ought to have known. Thus the issue is sharply drawn; appellant basing his claim that it was appellee's absolute duty to keep the crossing in repair upon certain statutory provisions hereinafter referred to, and appellee basing its claim of being required to exercise only ordinary care, etc., upon the fact that the said statutory provisions are not applicable, since, at most, they apply only to public county road crossings while the road over which appellant was traveling was not such a road. The testimony concerning the character and use and establishment of the dirt road is meager, but does show that appellee's line of railway traversed the county at this point as much as five years before the road was established, and that, until about one year prior to the trial of this case, another crossing about 100 to 150 yards west was used mainly by those traveling the road when the crossing was changed for the reason that the new crossing was more convenient, and was made possible by the fence being torn down which at that time inclosed the land over which the road now runs just before it reaches the crossing. It does appear that the county "road hands" did "work" the road, but it was not shown that any overseer was appointed therefor by the commissioners' court, or that the road was laid out or maintained by said court. The record contains no evidence tending to show that the land constituting the road was ever dedicated to the public by the owner or owners thereof, or any facts tending to show that the public had acquired same by prescriptive use. The most shown in the latter respect was by the appellant, who deposed that the road had been used for a period of nine years, except that portion which turned east from the old road about two years ago, and at the crossing of which over appellee's line of railway the accident occurred.

[1] Under the foregoing facts, appellant cites, in support of his contention that it was appellee's statutory duty to absolutely keep the crossing in repair, article 6494, R. S. 1911, which provides that: "It shall be the duty of every railroad in this state to place and keep that portion of its roadbed and right of way, over or across which any public county road may run, in proper condition for the use of the traveling public." The article also provides for penalties for failure to do so, recoverable by the county. Preliminary to a discussion of the article quoted, it may be said that it is immaterial, so far as relates to the duty of the railway to maintain the road in proper condition, whether the road was established prior or

subsequent to the building of the railroad, as counsel for appellee seem to think. G., C. & S. F. Ry. Co. v. Milam County, 90 Tex. 355, 38 S. W. 747. We do not believe however, that the evidence in the record shows that the road which crosses appellee's line of railway at the place of accident was the character of road contemplated by the article cited and relied upon by appellant. The use of the words "public county road," is entitled to such significance as the words themselves ordinarily import, in addition to any legal significance reasonably to be attached thereto. Interpreted free of legal significance, the term, we think, obviously refers to roads established by the counties of the state under the general laws, since, had it been the intention of the Legislature to include every species of public road, they would have omitted the use of the word "county." Interpreted in the light of the legal significance to be attached to the words, we think such construction cannot be intelligently denied. To the county authorities is reserved the right to lay out, establish, and maintain public roads, notwithstanding there may be public roads neither laid out nor maintained by the county, as, for instance, by dedication or prescriptive use, and the use of the term "public county road" in the article seems to us to have peculiar reference to roads maintained and established by the county authorities. Again, it may be said that such was the intention of the Legislature when it is considered that there are many "public" roads acquired by dedication or prescriptive use, as suggested, over which the travel is so scant and limited as not to justify, as a matter of public policy, making it negligence per se for railroads to fail to keep their crossings over such roads in proper condition, but in such cases to only hold them to the exercise of ordinary care in that respect.

Appellant further contends, however, that, by the provisions of article 6485, R. S. 1911, it was negligence per se for appellee to fail to keep said crossing in a proper condition. By said article it is provided that corporations authorized to operate railroads "shall have the right to construct its road across, along, or upon any * * * highway, plank road, [or] turnpike, which its road shall intersect or touch," provided such corporation shall restore such highway, road, etc., to its former state, "and shall keep such crossing in repair." In the case of T., B. & H. Ry. Co. v. Warner, 88 Tex. 642, 32 S. W. 868, our Supreme Court, in construing said article, gave to it, in effect, the same construction we have placed upon article 6494, notwithstanding article 6485 does not, in particular terms, designate the highways, roads, and turnpikes mentioned therein as "public county" highways, roads, etc., which incidentally affords another reason in support of our construction of article 6494. The right to recover damages received at a cross-

ing of the railroad and a dirt road claimed in the Warner Case was bottomed upon the failure of the railway to make and maintain a proper crossing at its juncture with a public highway, averred to be statutory negligence by the terms of said article 6485. The Supreme Court say in that case that the evidence developed on trial did not prove the dirt road was a public one, within the meaning of article 4170, now article 6485, since it was neither laid out and maintained under order of the county court, nor established as such by dedication and use. There was evidence that this road had been used by the public for 10 or 12 years, but there was no evidence of dedication by the owner of the land to the use of the public as a public highway. It will be noticed that the facts in the case just cited are nearly, if not exactly, similar with the facts in the instant case. To the same effect in principle is G., C. & S. F. Ry. Co. v. Montgomery, 85 Tex. 64, 19 S. W. 1015.

We have therefore in accordance with what we have said, reached the conclusion that there was no error in the court's charge holding appellee, under the evidence in the record, only to the exercise of ordinary care, for the reason that, under the construction placed upon article 6485 by the Supreme Court, the road appellant was traveling did not come within that act, and because, in our opinion, article 6494 has peculiar reference to roads designated and maintained by the several counties of the state. In connection with our conclusions herein, we call attention to the fact that the case of St. L. S. W. Ry. Co. v. Smith, 49 Tex. Civ. App. 1, 107 S. W. 638, relied upon by appellant as sustaining his position, is entirely dissimilar in the facts. In that case Associate Justice Talbot, speaking for the court, does say, in effect, that the liability to the public is the same under both provisions of the statute, which is obviously correct, in view of the construction placed upon the one article by the Supreme Court, and the wording of the other. The statement used by this court in the Smith Case, however, was in reference to a state of facts showing "a public county road" over which the railroad had failed to maintain proper crossing, and, that fact being undisputed, the duty was, of course, statutory, as the opinion recites. Of course we do not intend to be understood as holding that there is no liability for injuries resulting at crossings such as shown by the facts in this case. The facts in the record would have sustained a finding by the jury that appellant was using a crossing over appellee's railroad commonly and habitually used by the public with the knowledge and acquiescence of appellant, and that appellee had failed to exercise ordinary care to maintain the same in a reasonably safe condition, etc. The following cases directly and by analogy define appellee's liability under

the facts proven upon trial of the instant case: I. & G. N. Ry. Co. v. Douglas, 7 Tex. Civ. App. 554, 27 S. W. 793; Texas, etc., Ry. Co. v. Neill, 30 S. W. 369; Hall v. Railway Co., 35 S. W. 321; S. A. & A. P. Ry. Co. v. Belt, 24 Tex. Civ. App. 281, 59 S. W. 607; Cowans v. Railway Co., 40 Tex. Civ. App. 539, 89 S. W. 1116; M., K. & T. Ry. Co. v. Hollan, 49 Tex. Civ. App. 55, 107 S. W. 642.

[2] In addition to the issues we have just discussed, appellant asserts by his third assignment of error that the charge of the court was erroneous in submitting to the jury appellee's want of knowledge of the alleged condition of the crossing, because that issue was raised neither by the pleading nor the evidence. We are of opinion that the charge correctly submitted the only rule by which appellee could be held liable. The crossing was not at the intersection of a public county road, or such road as is contemplated by article 6485 as construed by the Supreme Court, and ordinarily there would have been no duty upon appellee to maintain the same in a safe condition. But, as we have said, the evidence shows that the crossing was commonly and habitually used by the public, and the rule in such cases is that the appellee would be liable for any damages resulting from any defect in the condition of the crossing due to its negligence, if it knew of such defect, or could have known of same in the exercise of ordinary care, and it was the duty of appellant to adduce testimony complying with such rule before he was entitled to recover. M., K. & T. Ry. Co. v. Hollan, 49 Tex. Civ. App. 55, 107 S. W. 642. In the absence of any statute fixing the degree of care to be used, appellee could only be held liable for injuries resulting from defects in the crossing of which it had knowledge, or of which, in the exercise of ordinary care, it ought to have known.

[3] The sixth assignment of error asserts that the court should not have submitted to the jury whether or not the manner or method in which the lumber was loaded upon appellant's wagon contributed to his injury, for the reason that the testimony was insufficient in that behalf. Contributory negligence in the respect indicated was plead, as shown in our statement of the case, and, in our opinion, an examination of the evidence does not authorize us in saying it was not sufficient to take that question to the jury for their determination. It is undisputed by the record that the lumber did slide or slip forward to such extent as to strike appellant's horses, and it was for the jury, after hearing the witness detail how the lumber was loaded, to determine whether the slipping or sliding was due to the manner of loading, or because of the drop of the wagon.

Finding no error in the record, the judgment is affirmed.

## On Rehearing.

Counsel for appellant earnestly insist that, in affirming the judgment of the lower court, we erred in our conclusions of fact. We adhere to the conclusions deduced from the facts as contained in our original opinion, but, in order that no injustice may be done appellant, and because the evidence upon the question of the character of the dirt road which crosses appellee's railroad at the place of accident is brief, we herewith by this method incorporate same in the opinion:

J. L. Webb testified: "I lived in that community before the railroad was built there. I could not say exactly the number of years the railroad was built before this town was built in this particular place, but, in my judgment, it was more than five years. The whole community there was originally called Massey, from J. M. Massey. The public road before the railroad was built was the north and south road from Floyd to Caddo Mills, and was west of where the accident happened. There is a crossing further west down there, and that one was known as the Cowskin-Greenville road. This crossing is about 200 yards west of where the accident happened. There was no dirt road here at all before the railroad was built; that was in a farm. After the town was platted and the streets made, then the railroad company built a section house, and the crossing took place. That has been used as a public crossing ever since the road was put in there. The county works it and grades it. It was graded about two weeks ago by the county."

W. T. Edgar testified: "That road that runs between the stores and crosses the track there at that point, we call it a public road; I don't know any name for it. It runs from Caddo Mills to Floyd. The commissioners put grades there, and the commissioners and all of them worked it over. I have always considered it a public road worked by the hands."

Appellant testified: "I had been living in that neighborhood most of the time for about nine years. I guess that road that runs between the stores and across the railroad track has been there ever since I have been there. It was used by the public. Right here for the last year or so it has been used more so than it was before. This here big gin lot—this road goes right through a gin lot, and up until a year or so ago this gin lot was fenced, and, if you went that road, you had to go right down the railroad between this fence and the railroad. While that gin lot fence was up, the road crossed from the south and turned right down on the north side of the track; it has been about two years since they tore the fence down. For the last two years there has been more travel over that road than before that. As far as I know the road was generally used by the public. It was a plain road right be-

tween the stores on out north; that road run right north. Leaving the stores where I had stopped, I drove on north. I drove down to the railroad and drove off across the railroad. In going from home to Caddo Mills the morning of this accident, I crossed this railroad at, I think they call it, the lower crossing; there is a crossing right opposite the store, and then there is one down below that always was called the lower crossing. Those crossings are 100 yards or 150 or 140, or somewhere along there apart. I had frequently passed over this crossing. I knew about where the gin lot was and how the road went down the railroad. It seems to me that this road had been opened up through the gin lot about two years. They had opened the gin lot so they could drive across there, and after that this crossing was used more frequently than before. Q. This lower crossing, which was about 150 yards west of this, had been used continuously all the time; that was the most prominent and public, was it? A. I guess it was used some more than this before this. Q. Especially before this was opened up it was used a good deal more than this—before they opened the gin lot? A. Might have been used some more; yes, sir. After you get out from between the stores you can take either course, or you can go straight ahead and go by the gin lot. I had crossed the lower crossing several yards west of this one that morning; my wife and my little girl were with me. No, sir; there is not a lane on the north side of the railroad north of this lower crossing going north that you enter or go out of going south down by the schoolhouse. Going north from the schoolhouse you do not strike a lane there anywhere. There is a lane on the south side of the railroad after you get past the right of way going south; there is none on the north side at all. Well, now, speaking about that lane, there is a lane, but it don't run up to the railroad; it is a lane both roads converge and enter; both roads come together about the time you get to it. The road that goes by the lower crossing west and the one I was traveling at the time the accident happened come together just before you get to that lane going north. The mouth of that lane is right due north of this road I was traveling in going with my wagon that morning. When I came from Caddo Mills, I would come up here (indicating)—there's the stores on the east side and this is the stores on the west side—now, I could turn this way and come on down here and cross down there and go north and then to my house, or I could go straight across, and go on either side of this gin, and come up here going diagonally across the lot, and strike the Floyd road (the same road) down here."