INTERNATIONAL & G. N. RY. CO. v. WILLIAMS. (No. 5446.)

(Court of Civil Appeals of Texas. San Antonio. March 31, 1915. Rehearing Denied April 21, 1915.)

1. RAILROADS ☞102—CROSSINGS—RIGHT TO COMPEL.

A railroad company cannot be compelled to place a crossing leading from a road parallel to the right of way to a private lane closed by a gate and having no outlet.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 306–314, 320–322, 769; Dec. Dig. ☞102.]

2. RAILROADS ☞441—INJURIES TO ANIMALS—FENCES—CROSSINGS—BURDEN OF PROOF.

In an action for killing stock entering the right of way at a crossing leading into a private lane, the burden was on the railroad company to show that it was not required by law to fence at that place so as to escape liability under Rev. St. art. 6603, placing an absolute liability on railroad companies for value of stock killed, with a proviso that, if it fences the track, it shall be liable only for want of ordinary care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1575–1595; Dec. Dig. ☞441.]

3. RAILROADS ☞413—INJURIES TO STOCK—CROSSINGS—FAILURE TO FENCE—ABSOLUTE LIABILITY.

Under Rev. St. art. 6603, making a railroad company absolutely liable for stock killed by locomotives, etc., with a proviso that, if the company fence its road, it shall only be liable for injury resulting from want of ordinary care, and articles 6494 and 6485, requiring public crossings to be kept open and in condition for public travel, the company's liability for injuries to stock entering the right of way by a

crossing leading from a road parallel to the tracks to a private closed lane, having no outlet and not used by the public, is the same as at any other place in the road where the company may fence and fails to do so, it not being a crossing in an inclosure contemplated by article 6486, and there being no showing of a crossing by necessity.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1459–1472; Dec. Dig. ☞413.]

4. RAILROADS ☞413—INJURIES TO STOCK—CROSSING—CONTRACTS—EFFECT.

Under Rev. St. art. 6603, placing an absolute liability on railroad companies for value of stock killed, with a proviso that, if it fence its track, it should be liable only for want of ordinary care, the company can enter into contracts with adjacent landowners for crossings over the tracks, but such contract would not affect their absolute liability unless the crossing was one required by law for public convenience.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1459–1472; Dec. Dig. ☞413.]

5. EVIDENCE ☞113—VALUE—MARKET VALUE.

The intrinsic value of stock killed on a railroad right of way is provable where there is no market value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. ☞113.]

6. EVIDENCE ☞142—VALUE OF STOCK—PRICE OF OTHER STOCK.

In an action for value of steers killed by a locomotive, evidence of what plaintiff paid for a yoke of steers not so good as those killed was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423; Dec. Dig. ☞142.]

Appeal from Anderson County Court; E. V. Swift, Judge.

Action by H. W. Williams against the International & Great Northern Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Wilson, Dabney & King, of Houston, and Morris & Sims, of Palestine, for appellant. Kay & Seagler, of Palestine, for appellee.

FLY, C. J. This suit was brought by appellee in the justice's court to recover the value of two work oxen that were killed by appellant on its track, as well as $20 attorney's fees. A trial in the justice's court resulted in a verdict for $90. The cause was appealed to the county court, where it was tried by jury, resulting in a verdict and judgment in favor of appellee for $110, for the steers, and $20 for attorney's fees.

The steers were killed at a private crossing which was approached from the west by an open road, but which, on the east side, was closed by a gate leading into a lane. The two fences inclosing the lane were joined to the fence of appellant that inclosed its right of way. The lane fences were extended beyond the gate in order to reach appellant's fence. Animals entering the crossing from the west side of the track were in a cul-de-sac when the gate was closed, from which they could not extricate themselves except by going back across the track. The crossing and gate and lane fences formed a trap for animals going over the crossing. A pub-

---

lic road ran along the railroad fence on the west side of the track, and the way to the crossing led from that public road.

It was neither pleaded nor proved that appellant was compelled by law to place a crossing at the place where the oxen were killed, but, on the other hand, it appears that the public road was on the west side of the fence, and consequently the crossing was not in some person's inclosure. It is not pretended that the road across the railroad was one ordered or laid out by the 'commissioners' court, but the road was merely a private one leading up by a lane to the house of a man named Suggs. The evidence fails to show that it was ever used by any one except Suggs or some one desiring to go to his house. The evidence does not show that the road ran any farther than Suggs' house, and the fact that it was inclosed by fences on either side would indicate that there was no outlet from it. However that may be, the evidence fails to indicate that appellant was required by law to keep a crossing at that place, or, which amounts to the same thing, was not authorized to fence at that point. There was no way, by law, under the facts, to open a road across the railroad at that point except through the commissioners' court; for it has been held that articles 6486 and 6488, Rev. Stats., which provide for openings or crossings through the fences of railway companies every one and one-half miles at such times and places "as may be demanded by any two or more citizens of the state who either live or own land within five miles of the place where such crossings may be demanded," are unconstitutional. Railway v. Webb, 102 Tex. 210, 114 S. W. 1171.

[1] Appellant could not, under the facts, have been compelled to have the crossing where it was, leading into a private lane closed by a gate. Rhine v. McKinney, 53 Tex. 354; Bennett v. Railway, 146 S. W. 353.

[2] If appellant was not required to fence its right of way at that place, it should have proved that fact. Railway v. Saunders, 26 S. W. 128; Railway v. Lee, 135 S. W. 694.

[3] Railroad companies are not required by law to fence their tracks at any point on their lines; the only provision of law on the subject being article 6603, Revised Statutes, which provides for the absolute liability of railroad companies for the value of live stock killed or injured by locomotives or cars in running over their lines, and which contains the proviso:

"That in all cases, if the railroad company fence its road, it shall only be liable for injury resulting from a want of ordinary care."

Whether a fence is built or not, it is required by article 6494 that roadbeds and right of ways over and across which any public county road may run shall be kept in proper condition for the use of the traveling public. To the same general effect is article 6485. The only other provision as to providing for crossings is found in article 6486, which, as hereinbefore stated, has been declared unconstitutional, except in so far as it provides for crossings in inclosures. No doubt, railroad companies can leave their tracks unfenced, or they can make just as many crossings over their tracks as they may desire, but in either instance they act at their own peril. When an injury to stock occurs at a crossing not required by law, the liability is the same as if the track had not been fenced at all at that place. Railway v. Webb, hereinbefore cited. As said in that case:

"The crossing was not upon a public road, and it is not shown that it was at a place where the company was required to keep one. * * * The liability must be held to be the same as if the track had not been fenced at all at that place."

In the case of Railway v. Cocke, 64 Tex. 151, the Supreme Court held:

"Under statutes in effect the same as in force in this state, it has been held that the general terms used in such statutes imposing a liability on railway companies for injuries done to animals, unless their railways are fenced, do not apply to such places as public necessity or convenience require should be left unfenced, as the streets of a city or town, depot and contiguous grounds, the crossings of highways, and other like places."

It was held in that case that, even where stock are injured within the limits of a city or town, it devolves upon the railroad company to show that the injury occurred at a place where the track could not be fenced. To the same effect is Railway v. Dunham, 68 Tex. 231, 4 S. W. 472, 2 Am. St. Rep. 484.

If, under the common law, "a road of necessity" could be opened across a railway track, it might become a road required by law, as it would be opened under the provisions of law. But no such character was given by the evidence to the road in question. It was not opened by the commissioners' court nor by any law, so far as appears from the evidence. As said in Railway v. Richmond, 28 Tex. Civ. App. 515, 67 S. W. 1031:

"When openings are left in the right of way fence where the railway is not required to leave them, or, in other words, where they are not authorized by law, the fence is not complete; and it would be no defense that this condition was attributable to an arrangement with an adjoining owner, so far as the rights of the public or third parties may be affected by the failure to fence at that particular place."

Speaking on the same subject, this court held, in Railway v. Wesendorf, 39 S. W. 132:

"The evidence indicates that the horse was out on the commons, and entered an open gate that led into the right of way of appellant. Because the gate was erected for the benefit of a landowner on the other side of the track presents no defense to the negligence of appellant in leaving the gate open. There was no attempt to show that the gates were at a spot where the law required openings; the only effort being to show that gates were built as a convenience to a man who had land adjoining the track."

So in the present case there was a crossing which, under the testimony, was for the

accommodation of Suggs alone, not even being a neighborhood road. It was not shown to be a road of necessity, if such roads are recognizable under the laws of this state. The naked proposition is: The oxen were killed at a railway crossing which had been open for a number of years, and therefore appellant was not liable in the absence of proof of a lack of ordinary care. There was no effort to show that the crossing was one recognized or required by law. Railway companies undoubtedly can enter into contracts with owners of land adjacent to their tracks as to giving crossings over the same, and the law would enforce such contracts, but such contracts will not protect the railways from their liability to the public.

[4] Railway companies are not compelled, but permitted, to fence their tracks, except across public roads and other places where public convenience requires that they should not be fenced, and, if they, for accommodation or under contract, permit other openings or crossings they can do so, but not at the expense of the public. If this court were to hold that crossings given wherever the law permitted them would protect railway companies from liability for stock killed or injured, it might as well be held that they would not be liable if the tracks were not fenced at all, because the law permits unfenced tracks all along the right of way. It must be held that exemption from liability, except on proof of negligence, will not be sustained except at those places required by law to be left open.

[5, 6] The evidence was ample to show the value of the steers independent of the testimony of appellee as to what they were worth to him. The animals were well trained for work. There was no market value for the animals, and appellee was authorized to prove their intrinsic value. It was permissible for him to state that he was compelled to pay $115 for a yoke of steers not so good as those killed. The witness Wright qualified himself to testify as to values of steers, and he testified that those that were killed were worth from $110 to $120. This testimony was not contradicted.

The judgment is affirmed.