PANHANDLE & S. F. RY. CO. v. HUCKA-
BEE et ux. (No. 1562.)

(Court of Civil Appeals of Texas. Amarillo.
Nov. 5, 1919. Rehearing Denied
Dec. 10, 1919.)

1. RAILROADS ⬡⟹303(1)—DEFECT IN CROSSING
CAUSING INJURY TO DRIVER.

A railroad company failing to use ordinary
care in maintaining a public crossing in repair
is liable for injuries to a driver thrown from a
wagon by the bad condition of the track with-
out negligence on his part.

2. RAILROADS ⬡⟹351(5)—INSTRUCTIONS AS TO
DUTY TO MAINTAIN CROSSING.

Instruction in language of Rev. St. 1911,
art. 6485, providing that a "railroad shall keep
such crossing in repair," with an instruction
that railroad was required to use ordinary care
to maintain crossing, did not impose an abso-
lute duty on the railroad.

3. TRIAL ⬡⟹129—ARGUMENT OF COUNSEL IN
REPLY TO OPPOSING ATTORNEY'S IMPROPER
ARGUMENT.

The rule that it is reversible error to per-
mit an attorney to advise a jury what the legal
effect of their answer to an issue would be is
subject to the exception that a party, whose
counsel improperly pursues a line of argument
not called for by the facts, will not be heard
to complain of reply of adverse party's coun-
sel thereto.

4. APPEAL AND ERROR ⬡⟹882(17)—ESTOPPEL
BY REQUESTING SUBMISSION OF ISSUE.

A party who requests jury to make finding
on certain question will be estopped from as-
serting there was error in submitting the
issue because there was no evidence authoriz-
ing its submission.

5. TRIAL ⬡⟹129—REPLY TO IMPROPER ARGU-
MENT OF COUNSEL.

In parents' action for son's death, where
defendant's counsel, after submitting issue of
number of years son would have continued to
contribute to parents' support and requesting
jury to consider evidence thereon, stated in
argument to jury that their only answer there-
to could be, "We don't know," parents' counsel
had the right to tell jury to make answer some
number of years or none, and that answer of,
"We don't know," would have caused mistrial;
such argument being in reply to improper argu-
ments of defendant's counsel.

6. DEATH ⬡⟹99(1)—DAMAGES TO PARENTS FOR
SON'S DEATH NOT EXCESSIVE.

Verdict of $1,750 given parents for death
of son who at time of death was contributing
$250 per year to support of parents over and
above expenses they were out on him, and in
all reasonable probability would have continued
to do so for next seven years, held not exces-
sive.

7. DEATH ⬡⟹95(1) — AMOUNT OF DAMAGES
JURY QUESTION.

The amount of damages for death rests
largely in the judgment of the jury, based on
facts of the particular case.

8. TRIAL ⬡⟹355(2)—ANSWER TO SPECIAL IS-
SUES.

Where each special issue was divided by let-
ter into several questions, jury's answer num-
bered to correspond with number of issue, and
not by the divisions as lettered, held sufficiently
intelligible for rendition of judgment.

Appeal from District Court, Floyd Coun-
ty; R. C. Joiner, Judge.

Suit by W. A. Huckabee and wife against
the Panhandle & Santa Fé Railway Com-
pany. Judgment for plaintiffs, and defend-
ant appeals. Affirmed.

W. C. Reid, of Albuquerque, N. M., and
Madden, Trulove, Ryburn & Pipkin and F. A.
Cooper, all of Amarillo, for appellant.

T. F. Houghton, of Floydada, for appellees.

HUFF, C. J. W. A. Huckabee and wife,
appellees, sued the appellant railway com-
pany for damages occasioned by the death
of their son, J. W. Huckabee, through the
alleged negligence of the appellant in failing
to keep and maintain its road crossing on
Virginia street, in the town of Floyd City,
in good condition, and in permitting its ties
and rails to rise above the level of the road-
way some four or five inches, and negligently
allowing the track so to remain. It is al-
leged the deceased, the son of appellees, was
crossing the appellant railway at the street
crossing above mentioned with a wagon load
of lumber, and that the wheels of his wagon
struck the track, and from the jar and fall
of the wagon on and from the rails caused
part of the load to fall, throwing the de-
ceased to the ground and inflicting injuries
from which he died. This case was revers-
ed by this court on a former appeal. 207
S. W. 329.

[1] The first assignment asserts error in
refusing the request to instruct a verdict for
appellant. We conclude the facts and cir-
cumstances of this case are sufficient to au-
thorize the finding that the crossing on the
street at the time of the injury was out of
repair and dangerous, as alleged, and that
such street was dedicated to the use of the
public as a thoroughfare; that it was the
duty of appellant to maintain it in repair;
that it did not do so; and that in such fail-
ure it did not use ordinary care. The con-
dition of the crossing at the time of the in-
jury was owing to the negligence of appel-
lant in failing to maintain the crossing in
repair and was the proximate cause of the
injury and death of the deceased. The
deceased used ordinary care in loading his
lumber on the wagon and in driving across
the railway track. His team was not wild
or unruly; the lumber did not fall or com-
mence to fall before the wagon reached the
track. The load of lumber was caused to
fall by the bad condition of the track, there-

⬡⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by causing the deceased to fall to the ground. This fall was not caused from the fright of the team before reaching the track. The deceased was not guilty of contributory negligence, and there is sufficient evidence to support the finding of the jury to that effect. Under the findings of facts by the jury, the railway is liable for such injuries. Ry. Co. v. Butcher, 81 S. W. 819.

By the second assignment, appellant insists that the trial court, by its charge on the issues submitted, placed too great a burden on it as to keeping the crossing in repair, by instructing that it was an absolute duty imposed upon appellant. Under this assignment appellant presents the proposition that in maintaining the crossing appellant was only required to use ordinary care. The charge given, of which complaint is here made, is as follows:

"You are instructed that the railway company in this case had a right to construct its road across the street at the point where it was constructed, but it was the duty of said company to restore said street thus intersected to its former state, or to such state as not to unnecessarily impair its usefulness, and to keep such crossing in repair."

The issue submitted, of which complaint is made, is as follows:

"After the construction of said track and the crossing on said street, did said company keep and have same in repair on the 23d day of February, 1917"—which was the date of the injury?

The jury answered this issue in the negative. The trial court, in addition to the above charge, also defined "negligence" and "ordinary care," giving approved definitions. He also submitted an issue as to whether, after the construction of its road, the appellant restored the street to its former state, etc. The jury answered that issue in the affirmative. The court submitted special issue No. 3, which is as follows:

"As the term 'negligence' has been defined to you, state whether or not the defendant company, in the construction and maintenance of the track and crossing, across the street in question, was guilty of negligence."

The jury answered this issue in the affirmative. And by the fourth issue they were asked to state if such negligence, if any, was the proximate cause of the injury, as "proximate cause" had theretofore been defined by the charge. This issue was answered in the affirmative. The jury were required to find if appellant had kept the crossing in repair on the day of the injury. They were also required to find, and did find, that in the maintenance of the crossing appellant was negligent, and that such negligence was the proximate cause of the injury. These two findings were sufficient to support the judgment.

[2] We think, when the entire charge is considered, the jury were instructed the appellant was only required to use ordinary care to maintain the crossing. The charge, of which complaint is made, is in the language of the statute. Article 6485, R. C. S. This statute imposed the duty upon the railroad to keep the crossing in repair. The mere fact that the court instructed the jury it was a duty on appellant to maintain the crossing did not instruct liability. The statute imposed the duty relative to the crossing. The court in effect instructed the jury that liability could only be established by the failure to use ordinary care to perform the duty of maintaining the crossing. And the jury, in answer to the issue, so found. It appears to be the holding of some of the courts:

"Where a railroad is constructed across a public road or highway [or street], already established, the duty of the railway company, under the statute, to keep the crossing in repair, is absolute." Ry. Co. v. Smith, 49 Tex. Civ. App. 1, 107 S. W. 638; Railway Co. v. Randall, 51 Tex. Civ. App. 249, 113 S. W. 181; Ry. Co. v. Haddox, 36 Tex. Civ. App. 385, 81 S. W. 1036; Railway Co. v. Gillenwater, 146 S. W. 589; Railway Co. v. Williams, 175 S. W. 486; Horton v. Railway Co., 171 S. W. 1023; Railway Co. v. Sherer, 183 S. W. 408 (11).

The appellant cites the cases of Stephenson v. Railway Co., 164 S. W. 1125; Railway Co. v. Johnson, 38 Tex. Civ. App. 322, 85 S. W. 476; Railway Co. v. Belt, 24 Tex. Civ. App. 281, 59 S. W. 607. The first case discussed the rule as to a crossing not on a public highway, and holds in such case the railway is only held to the exercise of ordinary care in relation thereto. The last two cases, however, appear to hold that it is an absolute duty to restore the crossing disturbed, but in maintaining the crossing it is only required to use reasonable or ordinary care. It is unnecessary for us to determine which rule we will follow in this case, as we think the trial court followed appellant's contention and construction of the statute as is manifest from the entire charge as above indicated by us. This assignment will be overruled.

The third assignment is based on the remarks of the appellees' counsel in argument to the jury and the action of the court in permitting such remarks and the refusal to instruct the jury not to consider them. The bill recites:

"While the plaintiffs' counsel was making his closing argument to the jury in connection with the defendant's requested special issue No. 8, as submitted by the court to the jury in his charge, counsel for plaintiffs stated to the jury that in answering said special issues they should make it some number of years or none, which would make it final, and that

if the jury answered it did not know it would cause a mistrial."

It is further recited in the bill:

"In connection with such statement to the jury, plaintiff states that it was in answer to defendant's argument to the jury where, after reviewing the evidence on that issue, defendant's counsel had stated to the jury that under the evidence before them the only answer the jury could make to said special issue was, 'We do not know.'"

The objection to the argument and request to instruct the jury to disregard it were overruled. Appellant requested the trial court to submit special issue No. 8, which the court did. The issue requested and given is as follows:

"How long under all the facts presented to you in the evidence before you would the deceased, Wesley Huckabee, have reasonably been expected to have remained with the plaintiffs and contributed his labor and earnings to their support?"

The jury answered: "Seven years."

[3] It is asserted in a proposition that it is reversible error to permit an attorney to advise a jury what the legal effect of their answer to an issue would be. This we understand to be the rule; but there is another one, or an exception, to the rule, to the effect if counsel for one party pursues a line of argument not called for by the facts of the case, and if it is improper, he ought not to be heard to complain of the reply, and in such case appellate courts will not reverse a judgment upon an assignment based upon such fact. Railway Co. v. Gracia, 62 Tex. 289, 290; Trinity, etc., v. Denham, 88 Tex. 203, 30 S. W. 856; Railway Co. v. Perry, 30 S. W. 709; Railway Co. v. Hagen, 188 S. W. 954; Wilson v. Fitch, 208 S. W. 556.

[4] When the appellant requested the jury to find how long the deceased would have been reasonably expected to contribute to appellees' support, it assumed there was evidence from which the jury could find the length of time such support would be given. The appellant would have been estopped from asserting there was error in submitting the issue because there was no evidence authorizing its issue. Appellant was inconsistent to argue to the jury there was no evidence upon which they could base an answer to the issue which it had submitted after requesting them to consider such evidence on the issue, and he should not have told them they could only answer, "We don't know."

[5] Now appellee certainly had the right to advise the jury they could answer "some number of years, or none." It is evident that counsel for appellees believed it was the purpose of appellant to obtain a mistrial by the answer sought in its argument. He was within his rights in requesting that such result be avoided, and if they found deceased would not have contributed for any number of years to say so, or if he, in all reasonable probability, would have contributed, to answer the number of years. The issue as submitted perhaps was not the proper method of obtaining the amount of damages to which appellees might be entitled. The ultimate fact to be established was the damages the appellees sustained in the death of their son. It is doubtless true the jury could consider the amount he had contributed and would, in all reasonable probability, have contributed in the future, in arriving at the ultimate facts sought. Appellant sought an answer to an issue on evidence to be considered in arriving at the ultimate fact sought, assuming there was evidence by which such issue could be answered, and then argued there was no such evidence and advised in effect a mistrial on that issue. It seems to us that counsel for appellees had the right to inform the jury, if they followed the advice of opposing counsel, what would be its result. He did not tell them how to answer the issue, but told them what appellant's request would mean. We do not think under the record appellant ought to be heard to complain.

The fourth assignment is also based on the opening argument of counsel for appellee. If there was any error, we can see no injury. If the facts were as stated, the argument, it seems to us, was legitimate and a reasonable deduction from the evidence.

[6, 7] The fifth assignment assails the verdict as being excessive. The jury found that the deceased contributed $250 to appellees' support per year at the time of his death, over and above expenses they were out on him, and in all reasonable probability he would do so for the next seven years. The judgment rendered was for $1,750. We are not prepared to say the verdict is excessive, and do not feel justified in requiring a remittitur. We did suggest on the former trial that the judgment then rendered for $3,500 under the facts was excessive. There is no mathematical rule for fixing the amount in cases of this kind, and under the evidence becomes a question for the jury and rests largely in the judgment of the jury, based upon the facts of the particular case.

The sixth assignment is also overruled.

[8] The seventh assignment objects to the judgment because it is asserted the jury failed fully to answer the special issues requested by appellant, which were submitted. There appears to have been seven special issues submitted, as requested by appellant. To illustrate the point made to the issue submitted and the answer of the jury, we give the first issue and the answer of the jury, as made:

"Defendant's specially requested issue No. 1: (a) Was the deceased, J. W. Huckabee, neg-

ligent in failing to provide a stronger standard and support for the load of lumber in question? (b) Did such negligence on the part of deceased contribute to the injuries resulting in his death?"

The jury answered No. 1, "No." So on through the entire seven issues they were so divided by letters, submitting several grounds of alleged contributory negligence, and in each instance the jury numbered their answer to correspond with the number of the issue and answered the issue by number, and not by the divisions as lettered. We think the answers are sufficiently intelligible upon which a judgment could be rendered. The answer to each of the issues is not uncertain.

The eighth and ninth assignments are overruled for the reasons given under the first assignment.

The judgment of the trial court is, affirmed.