GULF, COLORADO & SANTA FE RAILWAY COMPANY v. W. W. MONTGOMERY.

No. 7466.

**1. Duty of Railroads in Crossing Public Highway.**—Article 4170, Revised Statutes, prescribes the duty of a railway company in constructing its road across any watercourse, * * * highway, etc., that it shall restore the stream, * * * highway, etc., to its former state, or " to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair." A public highway may be defined as a public easement, by virtue whereof every one may pass and repass over a particular strip of land     Looked at from another point of view, a highway is a road or street maintained by the public for the general convenience.

**2. Evidence of Highway.**—There was in this case testimony to the effect that the road had been traveled by the public for twenty years; but that circumstance alone is not sufficient to show a dedication in a country where any one feels himself at liberty to pass at will over all unenclosed lands. Such crossing the railway company was not bound to maintain.

**3. Case in Judgment.**—The railway was constructed across a traveled way, not established by the commissioners court, or maintained by the public. It erected an embankment at the crossing and made no passway over it. It was across private property, never dedicated to public use. About seventy-five yards from the crossing of the road was a trestle, under which the public passed after the construction of the railroad. The trestle had three spans. The ground at middle span was lower than at the span where the accident occurred, and that was generally used. The ground had become muddy at that span, and the plaintiff, seated upon a load of wood upon his wagon, attempted to cross at the northeast span and was injured, it being too low to allow of his safe passage as he was driving. The plaintiff had often crossed at the trestle. The railway company had in no way indicated to the public that the road under the trestle was prepared or offered for public use. Under such facts it was error to refuse the instruction asked by the defendant company, that "If you believe from the evidence that the defendant did not construct the trestle bridge for the purpose of an under-grade crossing, and did nothing to induce plaintiff to believe that it was so intended, you will find for the defendant."

**4. Railway Crossing Highway.**—If it had been shown that the railway company had intended the trestle as a public crosssing, it should have been shown that the span where the accident happened was so intended, there being another more safe.

**5. Declarations which were Not Res Gestæ.**—Immediately after plaintiff was injured, one who had gone to his relief remarked, " that it was imprudent for plaintiff to pass under the trestle on his wagon." This was properly excluded; it was not res gestæ.

APPEAL from Collin.    Tried below before Hon. H. O. HEAD.

This is an appeal from a judgment for $800 damages for personal injuries suffered by plaintiff in attempting to drive a wagon loaded with wood, upon which he was seated, through an opening in trestle work in the road of the defendant.    Complaint was that the trestle was an imperfect highway, negligently constructed as a crossing of the track by the defendant.

*J. W. Terry* and *Alexander & Clark*, for appellant.—1. The declarations of a witness and bystander concerning an accident are admissible as res gestae if they are so connected with circumstances and the act itself, as to characterize it, although it may not appear to have been immediately contemporaneous with the act itself. The test is, was the declaration evoked by an obvious consideration of the act itself? Horton v. Reynolds, 8 Texas, 284; Insurance Co. v. Mosely, 8 Wall., 397; Commonwealth v. McPike, 3 Cush., 181; Harriman v. Stowe, 57 Mo., 93; The People v. Vernon, 35 Cal., 49; 1 Greenl. on Ev., 145 (notes); Abb. Trial Ev., p. 589, sec. 19; 1 Tayl. on Ev., 7 ed., sec. 588.

2. If the defendant constructed the trestle with no intention that it be used as a crossing, plaintiff's use of it as such would be at his own risk, especially if such use was merely to obviate the inconvenience of traveling a mile further to a regular crossing. Railway v. Underwood, 64 Texas, 463; Barkley v. Tarrant County, 53 Texas, 251; Railway v. Leslie, 57 Texas, 83.

3. If plaintiff was guilty of negligence, it was the proximate cause of the injury, because his act was intermediate as to any act on part of defendant and the accident itself. The burden of proof was certainly on the plaintiff to show defendant's negligence. The plaintiff's evidence raised against him a suspicion of contributory negligence, and hence the burden of proof on that issue was also upon him. Railway v. Leslie, 57 Texas, 83; Brandon v. Manf. Co., 51 Texas, 121; Seale v. Railway, 65 Texas, 274; Beach on Con. Neg., secs. 157, 158; Railway v. Foreman, 73 Texas, 311; Murray v. Railway, 73 Texas, 2; Railway v. Crowder, 63 Texas, 503.

*John Church* and *W. M. Abernathy*, for appellee.—Appellant in argument now, as on the trial, concedes its negligence in obstructing a public road and in failing to restore the part of such roadway to such state as not to unnecessarily impair its usefulness, and in failing to keep such crossing in repair, thereby violating a statutory duty. Rev. Stats., art. 4170. Plaintiff by reason thereof sustained injuries permanently disabling him.

The damages allowed are not claimed to be excessive, which brings us to the unavoidable conclusion that plaintiff rightly recovered, unless he was guilty of contributory negligence. This issue was submitted to the jury in a pertinent and pointed charge, and their verdict negatives the existence of such contributory negligence. They had evidence to sustain their decision. A stump was in the middle span, and this had been impassable for months. The northeast span was then in use, and was the only means of crossing on a road which had been used by the public generally for twenty years, and being so, plaintiff was justified in assuming he could travel safely where others did.

In the language of the Supreme Court, in Railway v. Lee, 70 Texas, 501, " It is not reasonable that a sane man will knowingly and recklessly expose himself to imminent bodily danger." His wagon does not seem to have been unusually high. He says he could easily have passed under, and would have done so, but for the fact that passage out was less than at the side at which he entered. He did pass the stringer next him; the further stringer crushed him, the height of the latter from the surface of the roadway being a foot less than the former.

The span used by appellee was the one in use by the public generally. Here then was a trap safe to enter, but not safe to get out of; just high enough to let plaintiff pass in easily, and just low enough to crush him in getting out.

GAINES, ASSOCIATE JUSTICE.—This action was brought by appellee to recover of appellant damages for personal injuries received by him while attempting to pass the track of the company under one of its trestles.

When the appellant company constructed its road through Collin County its track was laid across a road which had been in use a number of years by the public, but which was not a public road in the restrictive sense of that term. It had never been laid out or recognized as such by the Commissioners Court of the county. Where its track crossed this road, the company threw up an embankment which could not be crossed; but about seventy-five yards distant it constructed the trestle at which the accident occurred. After the railroad was completed, persons traveling the road passed under the trestle. It consisted of three spans. The appellee was injured while attempting to pass under the northeast span, with his wagon loaded with wood. He was seated upon the wood, and passed under the structure in safety until he reached the further side, when, by reason of a rise in the ground, he was caught between the timbers and the wagon and was injured. The evidence indicates that the ground was lower under the middle span of the trestle, but it had become muddy, and for that reason the appellee chose to pass under another.

The evidence tending to show that the company ever intended that the way under the trestle should be used as a crossing is meager. A witness testified that " he went there while the engineer was leveling the roadway under the trestle and asked him to make a better crossing, and he replied that he would do no more than he had done." The plaintiff himself testified: " I don't know whether the company intended it for a crossing or not. * * * The company had up no sign to indicate it was intended for a crossing. It did very little work that I know of to fix it for a crossing. The company sunk bar pits parallel with the track on each side of the trestle when the road was being made. There were

no planks put up over the bar pits leading to the trestle.    The bar pits are trenches cut along the track for drainage, I suppose."

A witness for defendant testified:   "I own the adjacent land to company right of way at the trestle.    I owned the land there about eight years, and there had been no public road laid out there.    There were no preparations or signs indicating it was to be used as a crossing.    It was about one mile to the first public crossing toward Copeville."

The appellant asked the court to charge the jury as follows:    "If you believe from the evidence the defendant company did not construct the trestle bridge for the purpose of an under-grade crossing, and did nothing to induce plaintiff to believe that it was so intended, you will find for the defendant; on the contrary, if you believe defendant constructed the trestle for the purpose of an under-grade crossing, and was guilty of negligence in so constructing it that contributed to plaintiff's injury, you should find for plaintiff, unless you believe plaintiff, by his own want of care, contributed to his injury."

The charge was refused, and its refusal is assigned as error.    We are of the opinion that the charge should have been given.    Article 4170 of the Revised Statutes provides that every railway corporation "shall have the right to construct across, along, or upon any stream of water, watercourse, street, highway, plank road, turnpike, or canal which the route of said railway shall intersect or touch; but such corporation shall restore the stream, watercourse, street, highway, plank road, turnpike, or canal thus intersected or touched to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair." If the railroad company is to be held bound to provide a crossing at or near the point at which its track intersected the road in question, the authority for so holding must be found in the article quoted.

Was the road a highway within the meaning of the statute?    "From our standpoint, a highway may be defined as a public easement, by virtue whereof every one may pass and repass over a particular strip of land.    Looked at from another point of view, a highway is a road or street maintained by the public for the general convenience."    9 Am. and Eng. Encyc. of Law, 362;   Kennedy v. Williams, 87 N. C., 6.    Which is the proper meaning of the word as used in our statute, it is hardly necessary to determine in this case.    The road under consideration was neither recognized by the Commissioners Court nor maintained by the county; nor in our opinion does the evidence show a dedication by the owners to the use of the public.    There was testimony to the effect that the road had been traveled by the public for twenty years; but that naked circumstance is not sufficient to show a dedication in a country where every one feels himself at liberty to pass at will over all unenclosed lands. Gilder v. City of Brenham, 67 Texas, 345.

In Railway v. Bridges, 74 Texas, 520, we held, however, that if such

company should undertake to construct a bridge across a road which was not a public highway, but which was in common use by the public, it would be responsible to one who in attempting to cross it should receive an injury resulting from its negligent construction. The fact of the construction of the crossing is an implied invitation to the public to use it; and the general rule applies, that any owner of property who invites persons to come upon it is bound to take measures to render the premises reasonably safe to those who accept the invitation.

The road in question was across private property, which had never been granted, dedicated, nor condemned to a public use, and might have been obstructed by the owners of the land adjacent to the company's track over which it passed at any time. The company was not bound to provide a crossing; and the fact that it constructed no crossing, unless the way under the trestle is to be considered such, was not conclusive evidence that it intended that such way should be used as a crossing for the road. Even if the evidence should be held sufficient to show that the company intended to make a road under the trestle, it leaves a doubt whether that way was prepared under the middle span or that under which the appellee received his injuries. If the way under the middle span was intended, the company was not responsible for an injury received by the appellee upon a way not provided for travel, however insufficient the former may have been. The issue whether or not the company had provided a crossing under the northeast span of the trestle for the use of the public should have been distinctly presented to the jury.

We are also of the opinion, that if the evidence showed negligence on part of the railroad company, it also showed negligence on part of the appellee. We have seen that the company was not bound to construct a crossing. If it did provide the way under the trestle, the question whether it was negligent or not would depend upon the further question, whether or not its servants or agents who did the work should reasonably have anticipated such an accident as in fact occurred. Would a prudent man have foreseen the danger? The appellee had passed under the trestle, hauling wood, before the accident occurred. He was accustomed to using the way. If the company's servants should have foreseen the danger, for a stronger reason he should have foreseen it.

The declaration of the witness Hamilton, made immediately after the accident, was that of a mere bystander expressing an opinion, and was not admissible as a part of the res gestæ. It was properly excluded.

The other questions presented by the assignments upon the instructions need not arise upon another trial, and will not be discussed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 26, 1892.