## SAN ANTONIO PUBLIC SERVICE CO. v. ALEXANDER.　(No. 572–4391.) *

(Commission of Appeals of Texas, Section B. Feb. 10, 1926.)

1. Evidence ⬦123(10)—Declarations immediately after collision as to whose fault it was held inadmissible as res gestæ, where mere opinion of declarant, since declarant would not be permitted to express such opinion.

Declarations of opinion as to fault of jitney driver made by passenger immediately following collision between jitney and street car *held* inadmissible as part of res gestæ, since passenger, if a witness himself, would not be permitted to express such opinion.

2. Appeal and error ⬦1059—Refusal to admit evidence that jitney driver remained silent when charged by passenger with fault of collision held harmless, in view of facts showing his negligence and instructions.

Any error in refusing to admit evidence that jitney bus driver remained silent when accused of negligence by passenger immediately after collision with street car was harmless, in view of other facts showing driver's negligence, and of instruction that jitney driver was negligent.

3. Trial ⬦306—Jury is not concerned with apportionment of damages among joint tort-feasors, and consideration of such matters is ordinarily improper.

A jury is not concerned with the apportionment of damages among joint tort-feasors, and ordinarily a consideration of such matters in their deliberations would be improper.

4. Trial ⬦306—Jury's consideration of apportionment of damages between joint tort-feasors held not misconduct, where all members agreed on amount of damage suffered, and such consideration was invited by special issue submitting relative fault without objection.

Jury's consideration of apportionment of damages between joint tort-feasors, invited by submission of special issue with respect to relative fault of defendants to which no objection was taken, *held* not misconduct, particularly where all agreed on amount of damages plaintiff suffered, the apportionment of such amount concerning them not.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by James P. Alexander against the San Antonio Public Service Company and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (270 S. W. 199), and the San Antonio Public Service Company brings error. Affirmed.

Templeton, Brooks, Napier & Brown, of San Antonio, for plaintiff in error.

S. Engelking, of San Antonio, for defendant in error.

SPEER, J. [1] Defendant in error sued the San Antonio Public Service Company, a street car company, J. F. Lozano, who owned

and operated a jitney bus, and the Southern Casualty Company, which carried a $2,500 insurance bond on the jitney bus, to recover damages for a personal injury sustained while riding as a passenger in the jitney bus on account of a collision between the jitney bus and a street car operated by the service company, and, to review the action of the Court of Civil Appeals in affirming such judgment (270 S. W. 199), the writ of error herein has been granted upon application of the service company. The petition for writ of error complains of two matters: First, a ruling upon the admissibility, of evidence; and, second, one upon the alleged misconduct of the jury. The first question is presented by a group of assignments, all of which, however, are similar, and upon which is predicated the proposition that certain declarations which were made on the ground immediately following the collision to the effect that it was not the motorman's fault, but was the fault of the jitney driver, were res gestæ, and were admissible, and tended strongly to show that the motorman was not negligent. The proposition further complains that the error in excluding such testimony was not rendered harmless by the instruction that the jitney driver was negligent. The Court of Civil Appeals, in discussing and deciding this point, said:

"This proposition fairly states the facts, and the testimony ordinarily would be admissible as part of the res gestæ. We think such statements come under the well-established rule in this state that, when such declarations accompany the transaction, and are made under such circumstances as will raise a reasonable presumption, they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design. I. & G. N. Ry. Co. v. Anderson, 82 Tex. 519, 17 S. W. 1039, 27 Am. St. Rep. 902."

But it held that, if the ruling of the court was error, it was rendered harmless because the trial court gave an instruction that the jitney driver was negligent. This holding was directly in response to the contention of appellant in that court that such evidence was admissible as in the nature of an admission by the jitney driver. To that extent the holding appears to be an answer to the proposition, but we think the Court of Civil Appeals was in error in its intimation, if not its holding, that the statements were in any event admissible as part of the res gestæ. The doctrine by which the hearsay rule of evidence is relaxed so as to admit spontaneous contemporaneous statements as part of the res gestæ does not extend to statements such as those under consideration here, which are but the expressions of opinion by the declarant. The rule is that the reproduction of statements will not be permitted under the res gestæ exception, where

the declarant, if present as a witness himself, would not be permitted to testify to the facts embodied in the statement. And there is no reason to suggest that the declarants here, if present in court, could express such opinions. The only case cited by the Court of Civil Appeals for its holding is not at all contrary to the rule we have just announced. The opinion in that case was written by Chief Justice Gaines, and the opinion of the same learned justice in the later case of G., C. & S. F. Ry. Co. v. Montgomery, 19 S. W. 1015, 85 Tex. 64, shows clearly that expressions of mere opinion by a bystander were not admissible as part of the res gestæ. In the case last referred to he says:

"The declaration of the witness Hamilton, made immediately after the accident, was that of a mere bystander expressing an opinion, and was not admissible as a part of the res gestæ. It was properly excluded."

In Barnes v. Barnes (Tex. Civ. App. w. ref.) 261 S. W. 485, it is said:

"It is the law that a declaration within the res gestæ rule is nevertheless inadmissible as evidence if it relates to a matter of fact which the declarant could not testify to as a witness. 22 C. J. 450; Sullivan v. Electric Co., 97 P. 1109, 51 Wash. 71, 130 Am. St. Rep. 1082."

The case of Sullivan v. Electric Co., 97 P. 1109, 51 Wash. 71, 130 Am. St. Rep. 1082, referred to involved the reproduction of an opinion under the res gestæ exception, and in the opinion the court uses this language:

"Three witnesses, called by the respondents, were permitted to testify, over objection, that at or about the time the deceased left the car a woman passenger in the same car got up, or jumped up, and exclaimed that 'it was murder,' or, 'looked like murder,' to let the deceased off at that place. * * * Assuming, without deciding, that exclamations of a mere bystander, in no manner connected with the principal transaction are admissible in evidence, yet such exclamations must relate to matters of fact which the party might properly testify to if called as a witness, and not to mere matters of opinion. To hold otherwise would place exclamations above sworn testimony. If the exclamation in question related to the principal transaction at all, it was nothing more than the expression of an opinion on the part of this woman that, if a person in the condition of the deceased were permitted to get off the car at that point, he would meet his death."

In City Ry. Co. v. Wiggins (Tex. Civ. App.) 52 S. W. 577 (w. ref.), it is said:

"The expression that 'they did not blame him, and that it was not his fault,' embodied the very conclusion to be determined by the jury. Such conclusion of one not a party to the suit was certainly not admissible. See Railway Co. v. Montgomery, 85 Tex. 64, 19 S. W. 1015; Saunders v. R. R. Co. (Tenn. Sup.) 41 S. W. 1032 [99 Tenn. 130]. The declaration of Overton, the bystander in this case, was not to be distinguished from that of appellee in the answer

offered in evidence. The whole was therefore properly rejected, the evidence having been offered as part of the res gestæ, and not as an admission of appellee."

In Saunders v. R. R. Co., 41 S. W. 1031, 99 Tenn. 130, cited above, the Supreme Court of Tennessee said:

"That part of the answer attributing to the plaintiff's daughter the statement that 'it was her father's fault' was incompetent for any purpose, and should have been excluded altogether. If she made the statement, it was, at most, but the expression of an opinion, and that, too, about a matter concerning which her opinion was not competent evidence."

In the course of that opinion the court referred with approval to Lane v. Bryant, 9 Gray (Mass.) 247, where the defendant's servant who was in charge of his carriage at the time of the accident, while being examined as a witness, was asked if he did not say, immediately after the collision, and while the plaintiff was being extricated, that the plaintiff was not to blame. In that case the court held that the alleged declaration of the servant was not competent for any purpose; neither as a part of the res gestæ nor as a foundation for contradiction.

[2] The Court of Civil Appeals did not give much consideration to the res gestæ contention, thinking, no doubt, the instruction of the court with reference to the negligence of the jitney driver was an answer to the assignment, and perhaps the matter was not there stressed with the same definiteness as it is in this court. At all events, the Court of Civil Appeals was right in its conclusion that no error was committed by the trial court in excluding the evidence.

[3, 4] This brings us to a consideration of the question of misconduct of the jury. This point, too, is presented by a group of assignments. But the gist of the complaint lies in this: The action being against the street car company, the owner of the jitney in which the plaintiff was riding, and the insurance company, the question of apportioning the damages arose, and was discussed, by the jury. During their deliberations, and while this matter was being discussed, the jury came into the courtroom, and sought to be instructed whether or not they would be permitted to apportion the damages. They were instructed they had nothing to do with this matter, but, after returning to their quarters, the evidence taken upon the motion to set aside the verdict shows that the matter was further discussed. The character and extent of the discussion will appear from the testimony of one of the jurors, as follows:

"The jury all understood that the bonding company was only liable for $2,500, but a verdict against the Public Service Company and Mr. Lozano was not limited—whatever verdict was placed against them would have to be paid. Then, the jury also discussed that they didn't feel that the Public Service Company ought to be made to pay the majority of the verdict, inasmuch as the street car was only a contributing cause, and only partially to blame for the accident. That is why the jury had the foreman to write the question down on a piece of paper and submit it to the court as to whether or not the jury could distribute the amount to be paid by each one; and the judge then said the jury could not distribute the amount; that was left for the court to do. Then some one suggested that they were sure that the court would deduct the $2,500 to be paid by the bonding company, and put the biggest part of the verdict against Lozano, the jitney owner, and put about five or six thousand for the traction company to pay, which would make it, say, according to the amount that they were to submit for the accident. And it was not until that question was thoroughly settled that every one said that was the way that they arrived at the amount to be paid. The subject was brought up once about whether Lozano had enough money to pay this verdict or not, and then another juror said it didn't make any difference whether he was able to pay it or not, that, inasmuch as he was the cause of the accident, the verdict would be rendered against him, and it would not affect the amount of money that the Public Service Company would have to pay for this accident; and, while trying to settle that matter, while deliberating, the question was written down asking the court if the jury could divide the damages, came down into court, asked the court that question, and the court told the jury they could not divide the damages. The jury understood the court was to divide that. I think that, if the jury had been left to divide that, a verdict would have been reached much quicker than it was this way. It was not until that discussion was settled about the Public Service Company only having to pay $5,000 to $6,000 that I agreed with the other jurors. I was firm, from the time we left the courtroom till we went to the jury, that the Public Service Company was only partially to blame for the accident, and I didn't see why, if they were only partially to blame for the accident, they should have to pay a big amount of damages. However, I felt if they were only to pay $5,000 or $6,000, which would only have been part of that, thought their part of the damages really amounted to about that much, as they were only a contributing cause, and I didn't see why they should have to pay a big amount of the damages for the accident. I started out with a figure of about $10,000, and afterwards came up to more than double that, because I understood then that the Public Service Company were only to pay a part of that. In the beginning I was under the impression that this verdict would be rendered against the Public Service Company, the whole verdict; but, after I understood that only part of that would be, would have to be, paid by the Public Service Company, and the other part by the jitney owner—was the reason I came up. * * *

"It was stated and discussed in the jury room to the effect that the court would apportion this judgment and would give judgment of five or six thousand dollars against the Public Service Company. That discussion influenced me to render my verdict same as the other, inasmuch as I thought Mr. Alexander was hurt, and, in view of the fact that the Public Service Com-

pany would have justice as well as any one else. I don't know it was generally discussed throughout, but the jury thought the Public Service Company would have to pay about five or six thousand dollars, the bonding company their $2,500, and Mr. Lozano the balance. That was discussed before and after the jury propounded the question answered in the supplementary charge—I remember that is what caused the jury to ask the court that question."

In the Court of Civil Appeals the contention was made also that the verdict was what is known as a "quotient" verdict, but that contention was decided against plaintiff in error, and the point is not renewed in this court. The question of misconduct of the jury as illustrated in the testimony above set out appears not to have been decided by the Court of Civil Appeals except inferentially from the affirmance of the judgment. The juror Krueger, whose testimony is set out above, further testified:

"We all agreed then we would render that verdict as the amount that Mr. Alexander ought to have. I won't say wherever he collected it, no, but that was the amount he ought to have. We all agreed to that. * * * My idea was that the court would do the dividing up as to how much each one would be. That is the idea I had at least—I did not get any definite figure from anybody, like a one-half, one-fourth, one-fifth—but the majority of the jury had in mind about $5,000 or $6,000 would be about the right verdict against the Public Service Company. That was their idea about what would be right and just. I remember the court told the jury they could not divide it up. * * * I said that when I went out to deliberate on a verdict I thought the plaintiff was entitled to recover $10,000. That is correct, yes, and thought the Public Service Company would have to pay about $6,000 of that, and the bond company about $2,500, and the $5,000 or $6,000 and the $2,500 would bring it up to about $7,500 or $8,000—that was in the beginning. I did not think the traction company would have to pay that much out of the $10,000, but when the verdict reached $21,250 then I thought the traction company would pay about $5,000 or $6,000. When we first went out I thought Mr. Alexander had been damaged $10,000. But the arguments and what transpired in the jury room, statements made, in other words, caused me to change my mind with reference to the extent to which he had been damaged—if it had not, I would have stated $10,000. Of course, I expected him to recover from some one the $21,250."

There is much testimony from other jurors, but it is all to the same effect. We have carefully considered the evidence heard upon the motion, and are clearly of the opinion the judgments of the trial court and of the Court of Civil Appeals declining to set aside the verdict for misconduct are right. We do not think the evidence shows any misconduct of the jury that was material in such sense as to require the verdict to be set aside. We have no reasonable doubt, or doubt at all, upon this point. In short, while

it is true a jury is not concerned with the apportionment of damages amongst joint tort-feasors, and ordinarily a consideration of such matter in their deliberations would be improper, yet, under the circumstances of this case, such discussion as here shown cannot be held to be improper conduct at all. For some reason the court submitted question No. 8 as follows:

"What person's negligence, if any, was the active and primary cause of said collision? Answer by using the words 'jitney driver' or 'street car motorman.'"

The jury answered "jitney driver." It is not difficult to understand how the jurors who were thus invited to determine the comparative negligence of the jitney driver and the motorman would discuss the question of apportionment of the damages, and, indeed, as stated by the foreman in his testimony upon the motion, one would naturally suppose from the submission of such an issue, after being told that the jury could not apportion the damages, that the court himself upon the answer to that question would make a just apportionment. Certainly one not versed in the law might so understand the purpose of the question. We ourselves are at a loss to understand why that issue was submitted. At all events, we do not think the jury was guilty of any misconduct in discussing and considering the comparative degree of negligence of the defendants, even in terms of apportionment of the damages, when they were thus required by the charge to find with respect to the relative culpability of the defendants. The submission of this question appears not to have been objected to by either party, and, if any misconduct followed, it was invited. In truth, it is not misconduct at all, in view of the circumstances stated. Besides, we think the undisputed evidence shows that such discussion and consideration was not material, for all the jurors were of the opinion, and finally freely agreed, that the amount of the plaintiff's damages should be $21,250, as actually returned. This was the full measure of their duty and powers upon that matter. They were not concerned with any apportionment of the damages.

We therefore recommend that the judgment of the Court of Civil Appeals affirming the judgment of the trial court be in all respects affirmed.

The writer concurs fully in this recommendation, but, in view of the constantly recurring question of the power of the Supreme Court to review the discretion of the trial court with respect to misconduct of the jury, or to entertain jurisdiction at all of such question, and in view of the fact he has himself entertained great doubts as to such jurisdiction and power, he has made an original investigation of the question, and is now thoroughly satisfied that the rule of the Su-

preme Court in entertaining jurisdiction and in revising the discretion of the trial court or of the Court of Civil Appeals has ample constitutional sanction. The reasons which prompted this doubt in the writer's mind, and which underlie the contention of want of jurisdiction and power, are the following: The Constitution of Texas, art. 5, § 3, provides:

"The Supreme Court shall have appellate jurisdiction only, except as herein specified, which shall be coextensive with the limits of the state. Its appellate jurisdiction shall extend to questions of law arising in cases of which the courts of civil appeals have appellate jurisdiction, under such restrictions and regulations as the Legislature may prescribe."

Article 1728, Revised Civil Statutes 1925, provides:

"The Supreme Court shall have appellate jurisdiction coextensive with the limits of the state, extending to all questions of law arising in the following cases when same have been brought to the courts of civil appeals from final judgment of trial courts. * * *"

Article 1590, Vernon's Sayles' Civil Statutes defining the jurisdiction of the Courts of Civil Appeals provides:

"The judgments of the Courts of Civil Appeals shall be conclusive in all cases on the facts of the case."

So that clearly, if passing upon a motion to grant a new trial for misconduct of the jury involves only "the facts of the case," then the Supreme Court has no jurisdiction to review it. This cannot be gainsaid. In that classic treatise, Ram on Facts, the initial statement is this:

"Subjects of jurisprudence are facts and laws; facts are the source and the cause of laws. From facts proceed rights and wrongs; both require the government of law—to establish and enforce the one, to restrain and punish the other. By fact is here meant anything that is the subject of testimony, anything that a witness rightly testifies to be a fact. If a thing be perceived by any sense of the body, or faculty of the mind, the perception is a fact. If anything is seen or heard, the seeing or hearing of it is a fact. If any emotion of the mind is felt, as joy, grief, anger, the feeling of it is a fact. If the operation of the mind is productive of an effect, as intention, knowledge, skill, the possession of this effect is a fact. If any proposition be true, whatever is affirmed or denied in it is a fact. A. said this or that or did this or that. If these propositions be true, then that A. did so say or did so do is a fact."

If "from facts proceed rights and wrongs; both require the government of law to establish and enforce the one—to restrain and punish the other," then this sequential process is law.

No proposition is better settled in Texas than this: Whether there is any evidence in support of a finding or verdict is purely and simply a question of law. But, where there is some evidence, the question whether it is sufficient to support such finding or verdict is a pure question of fact. Muhle v. Ry., 25 S. W. 607, 86 Tex. 459; Choate v. Ry., 44 S. W. 69, 91 Tex. 406; International & G. N. Ry. v. Vallejo, 113 S. W. 4, 115 S. W. 25, 102 Tex. 73; Railway v. Boone, 105 Tex. 188, 146 S. W. 533; Beck v. Texas Co., 148 S. W. 295, 105 Tex. 303; Wilson v. Freeman, 185 S. W. 993, 108 Tex. 121, Ann. Cas. 1918D, 1203; Electric, etc., Co. v. Ablon, 218 S. W. 1030, 110 Tex. 235.

Undoubtedly, then, whether or not the alleged misconduct of the jury took place, or whether or not a communication was made to the jury, or whether or not the jury received other testimony, within the meaning of article 2021, hereafter to be noticed, are pure fact questions, as to which the Supreme Court has no power or disposition to inquire. But let us examine the statute which authorizes an inquiry as to misconduct. Article 2021, Vernon's Sayles' Texas Civil Statutes, which governs the right to inquire as to misconduct of a jury, provides:

"Where the ground of the motion is misconduct of the jury or of the officer in charge of same, or because of any communication made to the jury, or because the jury received other testimony, the court shall hear evidence thereof; and it shall be competent to prove such facts by jurors or others, by examination in open court; and, if the misconduct proven, or the testimony received, or the communication made, be material, a new trial may, in the discretion of the court, be granted."

In Houston, etc., Co. v. Gray, 143 S. W. 606, 105 Tex. 42, the Supreme Court, through Chief Justice Brown, in overruling a motion for rehearing of its refusal to grant an application for writ of error, considered this statute very carefully, in view of the court's expressed doubt as to its authority, and reached the conclusion that the "discretion" conferred in the act is upon the same level with the discretion vested in the trial judge in many instances, and that the Supreme Court should review its exercise wherein it clearly appears that the rights of the parties have been disregarded. The opinion discusses and decides that question, but did not expressly discuss or decide its jurisdiction was not precluded by the constitutional and statutory provisions as to the facts of the case. It assumed this. It is further stated in that opinion:

"If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside."

In the case of Hines v. Parry (Tex. Com. App.) 238 S. W. 886, it was expressly decided

that the ruling upon a motion for new trial for misconduct of the jury is not the determination of facts which the Supreme Court is forbidden to review. The same question is again expressly decided in Payne v. Harris (Tex. Com. App.) 241 S. W. 1008. The Supreme Court approved the holding of the Commission of Appeals in both cases. The Supreme Court has entertained and exercised jurisdiction over such matter in many subsequent cases. Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Gulf, Colorado, & Santa Fé Ry. Co. v. Harvey (Tex. Com. App.) 276 S. W. 895; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106.

A proposition too well established to require the citation of authorities is that in matters of discretion the action of the trial court will not be revised by an appellate court, except for an abuse of such discretion. The decisions abound with such expressions as that there must have been a "clear" abuse, a "plain" abuse, a "manifest" abuse, a "palpable" abuse, a "gross" abuse, a "flagrant" abuse, and the like, but, after all the authorities everywhere agree that before the appellate court having jurisdiction to review will exercise its authority, there must have been an abuse of discretion by the trial court. We do not understand the Gray Case or any other decision by the Supreme Court to deny this wholesome rule. But the question recurs whether or not the discretion permitted by our statute is with respect to a matter of fact, or a rule of law. If the former, then the Supreme Court would have no jurisdiction, for reasons already discussed. Bouv.'s Law Dictionary, Rawle's Third Rev., thus defines "discretion":

"That part of the judicial function which decides questions arising in the trial of a cause, according to the particular circumstances of each case, and as to which the judgment of the court is uncontrolled by fixed rules of law. Discretion when applied to a court of justice means sound discretion guided by law. 4 Burr, 529. Judicial discretion is a mere legal discretion—a discretion in discerning the course presented by law; and what that has discerned, it is the duty of the court to follow. Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204."

It is thus apparent "discretion" pertains to a rule of decision. Any judicial determination of the consequence of a given state of facts is matter of law. The existence of the basis for such determination is matter of fact.

So that the following conclusions are inevitable: First, whether or not a jury has been guilty of alleged misconduct, or has received any communication or other testimony than that regularly admitted by the judge, is purely a question of fact, whose determination is concluded by the finding of the trial court, as reviewed by the Court of Civil Appeals under our constitutional and statutory

provisions of jurisdiction; second, that the "discretion" conferred by the statutes with respect to granting a new trial upon such facts, whatever they may be, is a legal discretion, uncontrolled by fixed rules of law to be sure, but nevertheless a matter of legal contemplation, and one therefore over which the Supreme Court has full jurisdiction as a question of law in the case, where its jurisdiction is not otherwise expressly proscribed; and, third, in the exercise of such jurisdiction, it will revise the discretion of the lower court only for abuse. The writer does not construe any of the cases reviewed herein as holding in any respect contrary to the above conclusions.

Another significant feature of the statute under consideration accentuating the reasons for the conclusions just stated is that it clearly indicates the extent to which the court shall hear evidence upon such motion. The limit as to the fact inquiry is whether there has been "misconduct of the jury or of the officer in charge of same, or any communication made to the jury, or whether the jury has received other testimony," and does not contemplate, much less require, that the court shall hear evidence as to the probable effect of such misconduct, communication, or testimony. The conclusion is inescapable that the fact inquiry is thus limited to the truth of the facts alleged to constitute ground, and does not embrace the further question as a fact, whether or not such misconduct, communication, or testimony actually influenced any of the jurors. The meaning of the statute is this: If such misconduct, or testimony received, or communication made, be proven, and be material—that is, of a nature tending or calculated to injure the rights of the complaining party—then the court may, and, of course, should, if the exercise of a sound legal discretion requires it, set aside the verdict. There is nothing in the statute requiring, or expressly permitting, the trial court to base the exercise of his discretion upon his finding that the act complained of actually did influence the jury or any member thereof. Indeed, if, for illustration, misconduct of the jury of a nature and character material—that is, calculated to injure—has been found, the court would not necessarily be called upon to further inquire if such conduct had had the actual effect to prejudice the complaining party. To inquire into such actual effect, so far as possible on the motion is permissible and advisable, since it may be of some aid in determining the legal questions of materiality and discretion. But, the facts constituting the alleged ground being found, they may be of such character as the court will not speculate as to their harmful effect, and that this court would not in any wise feel bound by any attempted finding, as of a fact, whether the same had actually affected the ver-

dict, for this presents a question of law, and is not within the true domain of fact. However, as already indicated, the circumstances must always be such in any case as to show an abuse of legal discretion before any appellate court will revise the ruling of the trial court, for, as said by the great Chief Justice in the Gray Case: "There is much in looking at the man who testifies."

The true rule undoubtedly is as stated in the Gray Case that, if the evidence taken by the trial judge (of the existence of misconduct within the statute) leaves it reasonably doubtful as to the prejudicial effect to the complainant, the verdict should be set aside. In the very nature of the matter it is a hapless task to inquire just what effect a given act, or misconduct, or evidence heard, had in the final conclusions of any juror. It is upon this principle that causes are reversed for the improper admission of evidence calculated to injure. Judge Nickels has well said in Moore v. Ivey, supra:

"The absence of actual effect cannot be established (conclusively at least) by the most emphatic denials made by jurors when they are called to account. * * * It is known by us all, furthermore, that none of us can definitely appropriate to any one thing its exact effect when an act has been done, or an opinion formed, under circumstances where some other thing may have contributed (subconsciously, perhaps) a portion to the result. Hence it becomes the duty of the court to look over and beyond the juror's protestation that he was influenced only by the 'law and evidence.' "

And, in even finer phrase, he adds:

"This because definite portions of an opinion or idea cannot be allocated to each of its various confederated causes."

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.