**A. B. C. STORAGE & MOVING CO., Inc., v. HERRON et ux.**

No. 10931.

Court of Civil Appeals of Texas. Galveston.
Feb. 21, 1940.

On Filing of Remittitur Feb. 29, 1940.

Rehearing Denied March 21, 1940.

Vinson, Elkins, Weems & Francis and Wood, Morrow, Gresham & McCorquodale, all of Houston, for appellant.

King, Cox & Rowe and Earl Cox, all of Houston, for appellees.

of speed; (c) that he was not operating the truck on his left-hand side of the center of the highway; (d) that he did not cause his truck to weave from side to side of the road; (e) that he did not fail to keep a proper lookout; (f) that he did not fail to have said truck under reasonable control; (g) that he was not operating said truck with old, worn and defective brakes; and (h) that he did not fail to slacken the speed of his truck.

Appellant urges as grounds for reversal, failure of the court to submit issues requested by appellant; failure of the court to give requested instructions; the exclusion of evidence tendered by appellant; that appellee's counsel in his argument to the jury committed reversible error; that the jury's verdict was excessive, both as regards damages awarded on account of lost services of the son, and as regards damages on account of the son's conscious pain and suffering.

Appellant introduced evidence to the effect that Price, the driver of the truck in which the deceased was riding, and which collided with appellant's truck, came over the hill between 40 and 45 miles per hour, and that as he started down the hill at such rate of speed he applied his brakes and his truck began zigzagging and skidding down the concrete highway and collided with appellant's truck when appellant's truck was on the right side of the road and the truck in which deceased was riding was on the wrong side. It is appellant's contention that the court should have submitted the special issue of whether the operation of the truck by Price in excess of 25 miles per hour, combined with the act of applying the brakes while such truck was being so operated in excess of 25 miles per hour, was the sole proximate cause of the collision.

CODY, Justice.

This is a suit by parents for the death of their minor son who was killed while riding as a guest in a truck which was being driven by Robert A. Price, Jr., when it collided with a truck belonging to appellant, on the Houston-Dallas Highway, in Walker County, Texas. The suit was also to recover for the conscious pain and suffering of deceased. The jury awarded appellees $4,000 for the loss of services of their son, and $15,000 for his pain.

The jury found negligence and proximate cause against appellant's truck driver: (a) in operating appellant's truck to the left of the center of the highway; (b) in not having appellant's truck under reasonable control; (c) in failing to slacken the truck's speed. On the defensive issues the jury found: (a) that the driver of the truck in which deceased was riding was driving more than 25 miles per hour, but this was not the sole cause of the collision; (b) that he was not driving at a high rate

Not only must the evidence be sufficient to justify the submission of an issue, but there must also be sufficient pleadings. Appellant pled, in addition to general denial to appellees' pleading, that the negligent acts of Robert A. Price, Jr., (the driver of the truck in which the deceased was riding as a guest passenger) were imputable to the deceased, and particularly in driving at a high rate of speed; in driving on the left-hand side of the center line of the highway; in driving and operating said truck in such a manner as to cause the same to swerve and swing from side to side of the highway and then

to the left and collide with appellant's truck; in not keeping a proper and reasonable lookout, etc. But submitting issues inquiring whether Price was operating the truck (in which the deceased was riding) on the left-hand side of the center line of the highway prior to or at the time of the collision, and whether he, Price, drove the truck in such a manner as to cause it to swerve and swing from side to side of the highway prior to the collision and then to the left and collide with appellant's truck, the court, it seems to us, necessarily covered the same defensive issue as would have been submitted by inquiring whether the operation of the truck by Price in excess of 25 miles per hour, combined with the act of applying the brakes, was the sole proximate cause of the accident. Only ultimate issues are required to be submitted to the jury; 41 Tex.Jur., 1016; "obviously, if all the ultimate controlling issues are presented, the answers of the jury necessarily dispose of all subordinate issues." Id., p. 1017. " * * * it is not necessary to submit a special issue where it does not call for the determination of some ultimate fact necessary to form the basis of a judgment, as where it relates to subordinate facts to be considered in determining ultimate facts, and necessarily embraced in the determination of the ultimate fact issue." Wichita, etc., Ry. v. Pepper, Tex.Sup., 135 S.W.2d 79, 84.

◼ Appellant offered evidence to the effect that when Price started down the wet, slippery hill, applied his brakes, and his truck began skidding and zigzagging down the hill and collided with appellant's truck on appellant's right, and Price's wrong, side of the road the applying of brakes is of course, a mere incident of driving. The answers made by the jury to issues submitted to them in the language practically of appellant's pleading covered the issue of whether or not the truck driver applied his brakes and, if he did, whether such act in applying his brakes was the sole proximate cause of the collision, as we have above indicated. It was not error for the court to refuse the issues in the language requested.

◼ The court charged the jury in connection with proximate cause: "By the term 'sole proximate cause', as used in this charge, is meant the only proximate cause. There can be but one proximate cause of an event." Our Supreme Court has adopted the holding by the Commission of Appeals in Southland Greyhound Lines v. Cotten, 126 Tex. 596, 91 S.W.2d 326, 327, 329, "The jury should be instructed in connection with the issues of sole proximate cause that there can be only one sole proximate cause of an event." Appellant objected to the charge wherein it read "There can be but one sole proximate cause of an event" for the reason that "under the law several acts of one of the parties may singly or combined be the sole proximate cause of an event, and said charge is calculated to and probably will cause the jury to believe that one particular act of one of the drivers of the trucks could, under the law, be the sole proximate cause of the collision. * *" And appellant requested that the jury be instructed that "Only one act or combination of acts of one of the participants in a collision can be the sole proximate cause of that collision". The court did not err in giving the definition which it did so give, and in refusing to give the definition appellant requested. The definition given has been approved by the Supreme Court, and is simpler and easier understood and applied, so it seems to us, than the definition tendered by appellant.

◼ The court submitted a special issue as follows: "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate the plaintiffs, W. P. Herron and Beulah Herron, for the loss sustained, if any, by them as a direct proximate result of the death of their son, Clarence Ray Herron, taking into consideration, exclusively, the following elements of damage and none other", etc. Appellant objected to such issue, among other things, because said issue, as submitted, failed to limit the damages to be recovered by appellees to those proximately resulting from the negligence of the appellant. And in support of its objection appellant relies on Finck Cigar Co. v. Campbell, Tex.Civ. App., 114 S.W.2d 348; Anderson v. Reichart, Tex.Civ.App., 116 S.W.2d 772, 776; and Standard Paving Co. v. Pyle, Tex.Civ. App., 131 S.W.2d 200, 204. The rule enforced in these three cases, to quote from two of them, is this: "We here expressly hold that in suits for damages it is necessary for the charge to limit the recovery to damages directly and proximately caused by the negligent act of the party sought to be charged therefor." This is no new doctrine originated by the Fort Worth Court of Civil Appeals, but has long been the law. But no special or peculiar language is re-

of appellant to produce his banker (who cashed his checks, and knew appellant's signature) to testify upon the issue of non est factum. In the case of Gulf, C. & S. F. Ry. Co. v. Dooley, 62 Tex.Civ.App., 345, 131 S.W. 831, it appeared that two doctors had examined plaintiff's wife but that they were not produced as witnesses, nor had plaintiff taken his wife's deposition in connection with his injuries. It was held permissible for counsel to comment on plaintiff's failure to produce these witnesses.

■■ We are not able to say that the court erred in refusing to admit evidence which was objectionable insofar as it was hearsay, for the sole purpose of showing that Price was available to appellees so that they could have placed him on the witness stand, to enable counsel to comment on the failure of appellee to call Price as a witness. For the evidence showed that Price had originally been appellant's witness, and had given appellant a statement to the effect that the collision was his fault; and that he subsequently changed sides as a witness; whether, in changing sides as a witness, he acted corruptly is a matter that could not be determined in the trial of this case. The rule which appellant seeks to invoke the benefit of is based on the presumption that arises out of the relation existing between a party to a suit and one who is so related to such party that the mere failure of such party to call such a one as a witness does itself raise a reasonable inference that such failure to call such person was because his testimony would have been unfavorable. Obviously, this rule does not apply to a situation where the evidence of a witness was equally available to both sides. "Generally, however, no unfavorable inference can be drawn or comment made on account of the absence of a witness whose evidence is equally accessible to both parties." 64 Corpus Juris. p. 271. That Price's evidence was equally accessible to both parties is manifested in the fact that he first was the witness of appellant, and gave it a statement that the collision was his fault; then afterwards established his accessibility to appellees by giving them a contrary statement. See Reynolds v. International & G. N. Ry. Co., 38 Tex.Civ.App., 273, 85 S.W. 323.

■■ The evidence shows that after the collision Price went to Huntsville, which was about 16 miles from the scene of the accident, and reported it to Mr. King, the Sheriff of Walker County. As to the state-

ment which Price made to him, Mr. King would have testified, if permitted, that Price "made the statement that when he made this curve that he pulled back on the road and that when he pulled back on the road he went over a little, and applied his brakes, and it seemed that his steering gear had frozen—that is the expression he used, I asked him what he meant by that, and he said he couldn't steer his car any further back and that he went across the black mark, and couldn't hold it on the incline of the hill." The court held that this statement was not res gestae, and refused to admit it in evidence. The musty subject of res gestae is well understood; it is only in applying it that difficulty arises. Unless an appellate court can say, as a matter of law, that the trial court erred in applying the rule of res gestae it must refuse to reverse the trial court's action in applying the rule.

■ Ellis Redding testified that upon hearing the crash he ran to the scene of the collision and that he and the driver of appellant's truck pulled Price out of his truck, and that he seemed excited. To the question asked Mr. Redding, "Did he (Price) say anything at that time?" Mr. Redding answered "He said this: he said 'a man was a damed fool—he said it was his fault.'" Appellees objected to the statement that it was his fault, as a conclusion and opinion, which objection the court sustained. Appellant contends that it was admissible as res gestae. Whatever may be the rule in other states, and whatever ought to be the rule in principle, the trial court applied the rule as its exists in Texas. In San Antonio Public Service Co. v. Alexander, 1926, Tex.Com.App., 280 S.W. 753, 754, the court said: "The doctrine by which the hearsay rule of evidence is relaxed so as to admit spontaneous contemporaneous statements as part of the res gestæ does not extend to statements such as those under consideration here, which are but the expressions of opinions by the declarant. The rule is that the reproduction of statements will not be permitted under the res. gestæ exception, where the declarant, if present as a witness himself, would not be permitted to testify to the facts embodied in the statement. * * * In City Ry. Co. v. Wiggins (Tex.Civ.App.) 52 S.W. 577 (w. ref.), it is said: 'The expression that "they did not blame him, and that it was not his fault," embodied the very conclusion to be determined by the jury. Such conclusion of one not a party to the suit was certainly not ad-

missible. See Gulf, C. & S. F. Ry. Co. v. Montgomery, 85 Tex. 64, 19 S.W. 1015 * * *.'" We are therefore constrained to hold that the court correctly excluded the proffered testimony.

■ Appellant assigns as reversible error argument made by appellees' counsel to the jury—there being several lawyers and other spectators in the room at the time:

"We are suing for $20,000.00, for that recovery, and I have no apology to make. I say that I may be more liberal, but I have no apology to make because I say to you gentlemen that there is not a person within the hearing of my voice in this courtroom that would undergo what that boy underwent out there the last hour and a half of his life for $20,000.00, or $50,000.00. I say your answer to that issue should be $20,000.00 * * *.

"That is not all; that is not all; you have got the question of conscious pain and suffering experienced by that boy in that hour and forty-five minutes, or at least more than an hour, that he was pinned in that truck; suffering, knowing that he was going to die, feeling life slowly ebbing away, begging for help and calling on the Lord. The Court asked you what is that—what is the reasonable compensation for that. I say to you that there is not a man within the hearing of my voice that would undergo that physical pain and agony and torture of mind for anything like $20,000.00, and you know it."

Appellant made no objection to the argument at the time, and complained of it for the first time in its motion for new trial.

The argument complained of in Rio Grande, E. P. & S. F. Ry. Co. v. Dupree et al., Tex.Com.App., 55 S.W.2d 522, 526, opinion by Judge Critz, when on the Commission of Appeals, was "Gentlemen of the Jury, the failure of this crew to blow the whistle and ring the bell has taken a life. Mrs. Dupree has lost her husband and her sons a father. It might have been you. It might have been me. Some of you gentlemen have sons. It might just as well have been your son. Remember that when you render your verdict, to do unto others as you would have them do unto you." Said the court, "as to the first objection, (a) above, we think the argument is not of such a character as would be calculated to cause the jury to forget their oaths and duties, and return a verdict regardless of the facts and the law. Under our system lawyers are allowed some latitude to engage in oratory. Of course they must stay within the record, and must not attempt to appeal to prejudice, passion, or sympathy. On the other hand, an attorney has a right to use such legitimate argument as will impress the jury with the seriousness and importance of the case. * * *" In Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160, 164, the court said, "Not every argument containing the bare suggestion to the jurors to consider the case from the standpoint of one of the parties, or as they would have their own cases considered, is ground for reversal."

We are unable to say that the argument complained of was an appeal to passion and prejudice rather than reason. Counsel was arguing the point what sum of money would compensate for the pain and suffering which the deceased underwent on the occasion in question. As stated in Texas & N. O. Ry. Co. v. New, Tex.Civ.App., 95 S.W.2d 170, 176, writ of error dismissed, the court said: "In transmuting pain and suffering into dollars and cents, the problem of the jury is to construct an equation composed of relatively imponderable elements. The law awards compensatory damages in money for wrongfully inflicted pain and suffering; but it furnishes no yardstick or scale by which to measure or weigh such pain and suffering pecuniarily. The only standard supplied is that the damages shall be compensatory; that is, commensurate with the injury. To 'compensate' is to pay the value of. To estimate the value or compensatory measure in money one must be able to visualize the intensity and duration of the pain and suffering, and then endeavor to place a fair value thereon."

If a lawyer could not make such a comment as is here complained of, he would in effect be limited to a bare recital of the evidence which the jury had heard bearing on the issue, and to reading the issue to the jury. Jurors do not expect such judicial restraint of an advocate, and are not so easily moved by advocacy as appellant seems to believe. The argument, so it seems to us, did not, under the authorities approved by the Supreme Court, exceed bounds of legitimate advocacy. We overrule this assignment.

■ Appellant complains that an award of $4,000 for the loss to the parents of the earnings of their son from his death until he attained his majority less the expense to them of his education and maintenance, and for the loss of the pecuniary benefits the

parents in reasonable probability received from the deceased after he attained his majority, is excessive. At the time of the boy's death the father was 66 years old, and had a life expectancy of 10.54 years; the mother was 58, and had a life expectancy of 15.39 years. The deceased was born September 5, 1916, and was killed on June 28th, preceding his twentieth birthday, and had a life expectancy of 42.87 years. Deceased had had three years of college work, and on the occasion of his death was returning from Galveston where he had made arrangements looking to entering the Medical School in the fall. He earned about $1,000 a year and contributed about three-fourths of it to his parents. His father was no longer working on account of his age. The deceased was the only child left at home, and he intended to help his parents as long as they lived. He had brothers and sisters older than himself who were doing well. We do not consider the award excessive. It was held that $7,500 was not excessive for parents, 57 and 65 years old, for the death of a son 20 years old. Galveston H. & S. A. Ry. Co. v. Pigott, 54 Tex.Civ.App. 367, 116 S.W. 841. The sum of $5,000 for the death of a 19 year old man very much attached to his mother was held not excessive. Texas & P. Ry. Co. v. Jenkins, Tex.Civ.App., 26 S.W.2d 305. However, we doubt the advantage of consulting other cases to see what verdicts have been upheld in other instances. We assume that the jury took into consideration that the deceased was at the outset of his intended professional education, but that they considered from the unusual enterprise that he exhibited in earning money that the sum of $4,000 was a reasonable award. We have no hesitation in sustaining the award as reasonable.

■ Appellant complains that the award of $15,000 for conscious physical pain and mental suffering of the deceased from the time he was injured until the time of his death, about an hour and a half, was excessive. Dr. Patterson, a physician at Madisonville, testified that the deceased was in a state of severe shock when he was brought to the hospital at 11:15 A. M. (which was something like two hours after the collision), was unconscious, and appeared to have a comminuted fracture of the right thigh, which was sufficient to cause unconsciousness, and that he never gained consciousness, and that notwithstanding the deceased cried out after he was injured, that it was his opinion that it was not reasonably probable that deceased was ever conscious after receiving the injury; that in his opinion the deceased died of shock. The deceased was pinned between the frame of the windshield with his feet up and his head down. Some witnesses testified that the deceased cried out "Lord have mercy", and "Oh God help me out of here", "Somebody help me out of here". The highest estimate of the time deceased was pinned in the truck was an hour and forty-five minutes. The collision occurred after 9 and before 10 o'clock in the morning.

In the state of the record before us, we are not warranted in doubting the liability of appellant for the injuries suffered by the deceased. But it is our opinion that the award by the jury for the conscious pain and suffering under the evidence in this case is excessive in the amount of $7,000. It is therefore our duty to reverse the judgment of the lower court because of the excessive amount of the judgment unless, before the expiration of 20 days, appellees file a remittitur of $7,000 in this court.

In the event such remittitur is filed, the judgment of the trial court will be reformed and affirmed so as to allow appellees the recovery of the $4,000 awarded for the loss of the services of their son and the sum of $8,000 for the conscious pain and suffering of their deceased son. Should the remittitur not be so filed, the judgment of the trial court will be reversed and the cause remanded for a new trial for the reasons above stated.

Reversed and remanded unless $7,000 remittitur filed within 20 days.

### On Filing of Remittitur.

■ It having been made to appear that appellees have filed the remittitur, as required by us to avoid a reversal of the judgment, to cure its excessiveness in the sum of $7,000, the judgment of the trial court is now here accordingly reduced, and, as so reformed, is affirmed.

Reformed and affirmed.